# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

MARTHA KRISTIAN and  
JAMES D. MASTERMAN,  

          Plaintiffs,  

v.  

COMCAST CORPORATION, COMCAST HOLDINGS CORPORATION, COMCAST CABLE COMMUNCIATIONS, INC., COMCAST CABLE COMMUNICATIONS HOLDINGS, INC., COMCAST CABLE HOLDINGS, LLC, and COMCAST MO GROUP, INC.  

          Defendants.

Case No. 1:03-cv-12466-EFH

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION

Attorneys for Defendants:

Mark A. Berthiaume (B.B.O. # 041715)  
Christopher Robertson (B.B.O. # 642094)  
Seyfarth Shaw LLP  
World Trade Center East, Suite 300  
Two Seaport Lane  
Boston, MA  02210-2028  
Telephone: (617) 946-4800  
Facsimile: (617) 946-4801  

Christopher M. Curran  
Jaime A. Bianchi  
George L. Paul  
White & Case LLP  
601 Thirteenth Street, N.W.  
Washington, D.C.  20005  
Telephone: (202) 626-3600  
Facsimile: (202) 639-9355  

March 12, 2004

BO1 15631908.1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ........................................................................................................................ 5

    I.      FEDERAL LAW MANDATES A STRONG PRESUMPTION IN FAVOR
           OF ARBITRATION. .......................................................................................... 5

    II.     THE SUBSCRIBER AGREEMENT WAS PROVIDED TO PLAINTIFFS
           PURSUANT TO FEDERAL STATUTES AND FCC REGULATIONS. ............. 7

    III.    THE SUBSCRIBER AGREEMENT CONTAINS A BROAD
           ARBITRATION CLAUSE WHICH ENCOMPASSES PLAINTIFFS'
           ANTITRUST CLAIMS. ....................................................................................... 9

           A.    Plaintiffs' Claims Arise Out of the Subscriber Agreement. ....................... 9

           B.    Courts reviewing the same arbitration provision as that contained in
                 the Subscriber Agreement have compelled arbitration. ............................ 11

    IV.    THE COURT SHOULD ENFORCE THE BAR AGAINST CLASSWIDE
           ARBITRATION. ................................................................................................ 13

CONCLUSION .................................................................................................................. 14

CERTIFICATE OF SERVICE .......................................................................................... 15

## TABLE OF AUTHORITIES

### CASES

Page

Acquaire v. Canada Dry Bottling,
    906 F. Supp. 819 (E.D.N.Y. 1995) ...................................................................................10

Automated Technology Machines, Inc. v. Diebold, Inc.,
    2002 WL 1009471, at 6 (E.D. La. May 15, 2002) ............................................................10

Barnstead v. Ridder,
    39 Mass.App.Ct. 934, 659 N.E.2d 753 (1996) ...................................................................6

Beneficial National Bank, USA v. Payton,
    214 F. Supp. 2d 679 (S.D. Miss. 2001) ..............................................................................8

Bercovitch v. Baldwin Sch., Inc.,
    133 F.3d 141 (1st Cir. 1998) ............................................................................................5, 6

Bischoff v. DirecTV, Inc.,
    180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................................................11

Boomer v. AT&T Corp.,
    309 F.3d 404 (7th Cir. 2002) .....................................................................................2, 7, 12

Carter, Moore & Co. v. Donahue,
    345 Mass. 672, 189 N.E.2d 217 (1963) .............................................................................9

Cohen v. AT&T Broadband Management Corp.,
    No. 01CH21535 (Cir. Ct. of Cook Co., Ill., Chancery Div. (Jan.24, 2003) ................2, 11

DeLuca v. Bear Stearns & Co., Inc.,
    175 F. Supp. 2d 102 (D. Mass. 2001) .........................................................................12, 13

Dean Witter Reynolds, Inc. v. Byrd,
    470 U.S. 213 (1985) ............................................................................................................2

Fluchmann v. Associates Finance Svcs.,
    No. 01-40076-NMG, 2002 WL 500564 (D. Mass. Mar. 29, 2002) ...............................9, 13

Godfrey v. United States,
    997 F.2d 335, 338 (7th Cir. 1993)) .....................................................................................8

Hobart-Farrell Plumbing & Heating Co. v. Klayman,
  302 Mass. 508, 19 N.E.2d 805 (1939) ........................................................................ 7

Local 285, Service Employees International Union, AFL-CIO v. Nonotuck Res.
  Associates, Inc.,
  64 F.3d 735 (1st Cir. 1995) ........................................................................................ 7

Mattox v. Decision One Mortgage Co., LLC, NO. 01-10657-GAO, 2002 WL 31121087,
  at 2 (D. Mass. Sept. 26, 2002) .................................................................................. 13

MCI Telecomms. Corp. v. Matrix Communications Corp,
  135 F.3d 27 (1st Cir. 1998) ........................................................................................ 9

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
  473 U.S. 614 (1985) ........................................................................................ 6, 9, 10

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
  460 U.S. 1 (1983) ................................................................................................. 2, 6

Perry v. Thomas,
  482 U.S. 483 (1987) .................................................................................................. 5

Scherk v. Alberto-Culver Co.,
  417 U.S. 506 (1974) .................................................................................................. 5

Seacoast Motors of Salisbury, Inc. v. Chrysler Corp.,
  959 F. Supp. 52 (D. Mass. 1997) ............................................................................... 6

Vigil v. Sears National Bank,
  205 F. Supp. 2d 566 (E.D. La. 2002) ......................................................................... 8

## STATUTES

9 U.S.C. §§ 1, 2 ............................................................................................................... 6

9 U.S.C. §§ 1-14 ("FAA") ............................................................................. 2, 5, 6, 10, 13

9 U.S.C. §§ 2 - 4 ....................................................................................................... 1, 14

9 U.S.C. § 2 ..................................................................................................................... 5

9 U.S.C. § 4 ............................................................................................................... 5, 13

15 U.S.C. § 1-2 ................................................................................................................ 1

47 U.S.C. § 151 ............................................................................................................... 6

47 U.S.C. § 551 ............................................................................................................................. 4

47 U.S.C. § 552 ............................................................................................................................. 7

47 U.S.C. § 552(b) ........................................................................................................................ 7

M.G.L. ch. 251, § 1 (West 2004) .................................................................................................. 6

## OTHER AUTHORITIES

47 C.F.R. Part 76 Subpart T ..................................................................................................... 3, 7

47 C.F.R. § 1603 ........................................................................................................................... 8

Implementation of Section 8 of the Cable Television Consumer Protection and
    Competition Act of 1992 - Consumer Protection and Customer Service, FCC
    Report and Order, 58 F.R. 21107, 21108 (1993) .................................................................. 7

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION

Defendants, Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications, Inc., Comcast Cable Communications Holdings, Inc., Comcast Cable Holdings, LLC, and Comcast MO Group, Inc. (collectively "Comcast" or "Defendants"),[1] pursuant to 9 U.S.C. §§ 2 - 4, move this Court for an order compelling Plaintiffs to submit the claims brought in their Complaint to binding arbitration, and staying or dismissing this action.[2]

## INTRODUCTION

This action is one of five related antitrust class actions that were filed on the same day in five different courts around the country. On December 8, 2003, this case and another just like it were filed in Massachusetts, two others were filed in Illinois, and one was filed in Pennsylvania. Plaintiffs Martha Kristian and James D. Masterman, two subscribers of Comcast cable television, allege the same antitrust claims in this action under the same theories and same alleged facts as those raised in the other actions.

Defendants move to compel arbitration based on a clause found in the Plaintiffs' Subscriber Agreements. Pursuant to the Subscriber Agreements, the Plaintiffs expressly agreed to arbitrate "any claim or dispute related to or arising out of [their cable television Subscriber Agreement] or the services provided." Plaintiffs' allege that they "have paid higher prices for cable television services" because Comcast's agreements to exchange or "swap" cable television assets with other cable operators were anticompetitive and allegedly violated Sections 1 and 2 of

---

[1] All Defendants make a special appearance for purposes of this Motion to Compel Arbitration and reserve all rights they may have to challenge personal jurisdiction over them.

[2] "If all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it." Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 179 (3d Cir. 1998).

1

the Sherman Act, 15 U.S.C. §§ 1-2. Am. Compl. ¶4 - ¶6. These claims plainly relate to the cable services provided to the Plaintiffs by Comcast.

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-14 ("FAA"), this Court should enforce Plaintiffs' agreement to arbitrate – just as the courts enforced similar agreements to arbitrate disputes in Boomer v. AT&T Corp., 309 F.3d 404 (7th Cir. 2002) (compelling arbitration of long distance telephone service subscriber's claims under consumer subscriber agreement) and Cohen v. AT&T Broadband Management Corp., No. 01 CH 21535 (Circuit Court of Cook County, Illinois, County Dept., Chancery Div. Jan. 24, 2003) (compelling arbitration of cable subscriber's claims under the subscriber agreement at issue in this action). Courts are required by the FAA to "rigorously enforce agreements to arbitrate" (Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)) resolving any doubts as to arbitrability "in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.")

Pursuant to the plain and unambiguous terms of their Subscriber Agreement, the Court should compel Plaintiffs to arbitrate their claims.

## BACKGROUND

This is an antitrust action brought as a putative class action concerning the provision of Comcast video programming services to subscribers in the Boston "cluster." Am. Compl. ¶23. Plaintiffs seek to represent a putative class of an estimated 2 million subscribers in Boston. Am. Compl. ¶24.

Plaintiffs Kristian and Masterman have been cable subscribers in the Boston area for several years. Kristian has been a subscriber of AT&T Broadband and subsequently Comcast since June 15, 1999, and is a current Comcast subscriber today. Affidavit of William Devine, ¶6. (copy attached as Exhibit 1). Similarly, Masterman has been a subscriber of AT&T Broadband

2

and subsequently Comcast since October 15, 1987, and is a current Comcast subscriber today. Devine Aff. ¶7.

A Subscriber Agreement that contains an arbitration clause governs their cable television service. Among the documents comprising their Subscriber Agreement (*e.g.* Work Orders[3] and annual notices) is a document that specifically addresses subscriber disputes with Comcast. The document, entitled "Policies & Practices - Notice to Customers Regarding Policies, Complaint Procedures & Dispute Resolution" (the "Policies & Practices") was sent to all Boston-area AT&T Broadband subscribers in 2002 and subsequently sent to all Boston-area Comcast subscribers in 2003. Devine Aff. ¶4(a) and ¶4(b). After the mailing, Kristian and Masterman both continued to receive cable service and neither has ever objected to the arbitration clause contained in the Policies & Practices. (Devine Aff. ¶6 and ¶7).

Pursuant to their respective Subscriber Agreements, Kristian and Masterman received cable service on a "month-to-month basis." Policies & Practices ¶2. They could terminate their cable service at any time simply by giving notice to their cable operator. Policies & Practices ¶4. For example, they could cancel cable service when changes were made to the terms of service if they found such changes unacceptable. Policies & Practices at 1 and ¶3. Continuing to receive service after the effective date of the change is deemed acceptance of the change in the terms of service and becomes binding on them. Id. Among the documents constituting the Subscriber Agreement, annual notices (such as the Policies & Practices), are mailed out each year pursuant to FCC regulations, specifically 47 C.F.R. Part 76 subpart T, and moreover, a subscriber notice "is considered given when deposited in the U.S. mail." Devine Aff. ¶5. Thus, it is clear that

---

[3] A Work Order is a document memorializing the initial installation of service or a subsequent repair to the cable service provided.

3

Kristian and Masterman were covered by the arbitration provision mailed to them in 2002 and 2003.

The Subscriber Agreement also contains a broad arbitration provision that covers "any claim or dispute <u>related to</u> or <u>arising out of</u> [the Subscriber Agreement] or the services provided" (emphasis added):

> **10. MANDATORY AND BINDING ARBITRATION**
>
> IF WE ARE UNABLE TO RESOLVE INFORMALLY ANY CLAIM OR DISPUTE RELATED TO OR ARISING OUT OF THIS AGREEMENT OR THE SERVICES PROVIDED, <u>WE HAVE AGREED TO BINDING ARBITRATION</u> ....

Policies & Practices ¶10 (capitalization in original, emphasis added).

The Subscriber Agreement also specifically exempts claims from being arbitrated on a class basis:

> <u>THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION</u> OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC ..., OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED UNLESS YOUR STATE'S LAWS PROVIDE OTHERWISE.

Policies & Practices ¶10 (capitalization in original, emphasis added).

The arbitration provision contains various procedural safeguards for subscribers. For example, the subscriber is given a choice of arbitration services and is provided with a convenient forum. Policies & Practices ¶10. Further, the subscriber is not responsible for the filing fees in the arbitration, nor the arbitrator's costs and expenses. Id. Finally, not every claim is subject to arbitration, as the subscriber may litigate some claims, such as those brought under

4

47 U.S.C. § 551 (providing a private right of action for the enforcement of privacy provisions in the Cable Act). Id.

On December 8, 2003, Kristian and Masterman filed their Complaint. They have not sought to arbitrate their claims, but instead raise them in a putative class action.

## ARGUMENT

### I. FEDERAL LAW MANDATES A STRONG PRESUMPTION IN FAVOR OF ARBITRATION.

The FAA requires Plaintiffs to abide by their agreement to arbitrate. The FAA applies to the arbitration provision contained in Plaintiffs' Subscriber Agreement. Under the FAA, "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... <u>shall be valid, irrevocable, and enforceable</u>." 9 U.S.C. § 2 (emphasis added). Section 3 of the FAA further provides for a stay of proceedings where the court is satisfied that the issue before it is arbitrable, and in Section 4 for an order compelling arbitration if there has been a "'failure, neglect, or refusal' of any party to honor an agreement to arbitrate." <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 511 (1974) (enforcing clause in purchase and sale contract requiring arbitration of claims arising out of the contract in Paris).

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." <u>Perry v. Thomas</u>, 482 U.S. 483, 489 (1987); see also <u>Bercovitch v. Baldwin Sch., Inc.</u>, 133 F.3d 141, 147 (1st Cir. 1998) ("The issue of arbitrability must be analyzed in light of the strong public policy favoring arbitration . . . ."). Indeed, in enacting the FAA, Congress intended "to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." <u>Perry</u>, 489 U.S. at 490.

5

Massachusetts law is fully in accord. Massachusetts' Uniform Arbitration Act is patterned after the FAA and establishes that arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Mass. Gen. Laws Ann. ch. 251, § 1 (West 2004). Moreover, "[t]here is a strong public policy in Massachusetts favoring arbitration as an alternative to litigation." Barnstead v. Ridder, 39 Mass.App.Ct. 934, 936-37, 659 N.E.2d 753 (1996) (affirming order compelling arbitration of claims between parties to a joint business enterprise agreement).

The duty to arbitrate applies to any claim that is arbitrable and the FAA expressly applies to cable television service and "commerce" of the kind at issue in this dispute. 9 U.S.C. §§ 1, 2.[4] Moreover, it is well-established that private antitrust claims brought under the Sherman and Clayton Acts are arbitrable. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628-29 (1985) (compelling arbitration of Sherman Act claim); see also Seacoast Motors of Salisbury, Inc. v. Chrysler Corp., 959 F. Supp. 52, 55 (D. Mass. 1997) (holding that Supreme Court's reasoning in Mitsubishi "would apply equally well to domestic antitrust cases.").

As the Supreme Court has held, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25. Plaintiffs bear the burden of establishing why the arbitration clauses should not be enforced. See, e.g., Bercovitch, 133 F.3d at 149 (holding burden was on plaintiffs to prove that statute on which they based their claims precluded enforcement of arbitration agreements as to those claims). Moreover, a district court may not deny a party's request to arbitrate an issue "unless it may be

---

[4] The FAA applies to the Subscriber Agreement because the provision of cable television service involves a transaction in interstate commerce, a fact conceded by Plaintiffs in their Complaint (¶12). See also 47 U.S.C. § 151 (Communications Act of 1934 was enacted for the purpose of "regulating interstate and foreign commerce in communication by wire and radio").

said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Local 285, Serv. Employees Int'l Union, AFL-CIO v. Nonotuck Res. Assocs., Inc., 64 F.3d 735, 738 (1st Cir. 1995).

## II. THE SUBSCRIBER AGREEMENT WAS PROVIDED TO PLAINTIFFS PURSUANT TO FEDERAL STATUTES AND FCC REGULATIONS.

Kristian's and Masterman's Subscriber Agreement expressly provides for arbitration. Such agreements are common in the cable television industry. Congress and the FCC have set forth a regulatory scheme that permits cable operators to address and later modify dispute resolution procedures via subscriber notices, such as those contained in Kristian's and Masterman's Subscriber Agreement. Under the Cable Television and Consumer Protection and Competition Act of 1992 (P.L. 102-385, 106 Stat. 1460), Congress directed the FCC to "establish standards by which cable operators may fulfill their customer service requirements." 47 U.S.C. § 552(b). In establishing these standards, the FCC stated:

> The Commission will require cable operators to provide written information at the time of installation and, at least annually, to all subscribers on products and services, prices and options and conditions of subscription to programming and other services, installation and service maintenance policies, instructions on how to use the cable system, and billing and complaint procedures.

Implementation of Section 8 of the Cable Television Consumer Protection and Competition Act of 1992 – Consumer Protection and Customer Service, *FCC Report and Order*, 58 FR 21107, 21108 (1993) (emphasis added).

The Subscriber Agreement – containing the mandatory arbitration provision -- was mailed as an annual notice to both Kristian and Masterman in or about November 2002 and again in 2003, pursuant to 47 U.S.C. § 552 and 47 C.F.R. Part 76, Subpart T, and pursuant to the cable

operator's usual practice of providing notice using standard mailing procedures. Devine Aff. ¶3.[5] Conspicuously, the words "Important Notices To Our Customers" appeared in large letters on the front page of the 2002 and the 2003 Policies & Practices. Additionally, in large bold letters, the Policies & Practices states: "This Document Contains Important Information Regarding Our Policies and Practices, Including Complaint Procedures, Arbitration And Dispute Resolution." Finally, the arbitration provision itself contained in paragraph 10 of the Policies & Practices is in all capital letters as are the words contained in the heading of the paragraph (*i.e.*, "MANDATORY AND BINDING ARBITRATION").

The 2002 and 2003 mailing alerted Kristian and Masterman of a change concerning arbitration of disputes with their cable provider. Thus, Kristian and Masterman were both afforded an opportunity to disconnect their service upon receiving the 2002 and 2003 Policies & Practices, but neither did so. Devine Aff. ¶6 and ¶7.[6] Instead, they continued to use the cable service after receiving the Policies & Practices. Devine Aff. ¶6 and ¶7. Under the Subscriber Agreement, continued use of the service by the subscriber would be considered by the cable operator as acceptance of changes to the terms and conditions of the service provided. Policies & Practices at 1. Other courts have enforced arbitration clauses under similar circumstances where an arbitration clause was added to a consumer services contract as a subsequent amendment via mailed notice. See, e.g., Vigil v. Sears Nat'l Bank, 205 F. Supp. 2d 566, 568 (E.D. La. 2002) (mailed notice of arbitration clause enforceable); Beneficial Nat'l Bank, USA v.

---

[5] In Massachusetts, a mailing in the ordinary course of business is prima facie proof of receipt of the mailing. "The mailing of a letter properly addressed and postpaid, does not merely create a presumption but rather constitutes prima facie evidence of delivery to the addressee in the ordinary course of mail." Hobart-Farrell Plumbing & Heating Co. v. Klayman, 302 Mass. 508, 19 N.E.2d 805, 807 (Mass. 1939) (citations omitted). See also Boomer v. AT&T Corp., 309 F.3d 404, 415 n.5 (7th Cir. 2002) (quoting Godfrey v. United States, 997 F.2d 335, 338 (7th Cir. 1993)).

[6] FCC regulations require cable operators to provide their subscribers with thirty days advance notice before any significant changes to their cable service becomes effective. See 47 C.F.R. § 1603.

8

Payton, 214 F. Supp. 2d 679, 686 (S.D. Miss. 2001) (arbitration compelled where arbitration clause was added to agreement and notice of change was mailed to customer).

Accordingly, the Subscriber Agreement, with its accompanying arbitration provision, was both offered and accepted under federal law.

### III. THE SUBSCRIBER AGREEMENT CONTAINS A BROAD ARBITRATION CLAUSE WHICH ENCOMPASSES PLAINTIFFS' ANTITRUST CLAIMS.

#### A. Plaintiffs' Claims Arise Out of the Subscriber Agreement.

The Subscriber Agreement contains a broad arbitration provision covering "any claim or dispute <u>related to</u> or <u>arising out of</u> [the Subscriber Agreement] or the services provided." Policies & Practices ¶13 (emphasis added). A broad "arising out of" type of arbitration clause "casts a wide net." Fluchmann v. Associates Fin. Svcs., No. 01-40076-NMG, 2002 WL 500564, at *6 (D. Mass. Mar. 29, 2002) (compelling arbitration of Truth in Lending Act claims brought by spouse of borrower and holding that "similarly broad arbitration clauses governing 'any disputes' arising under the agreement apply even to a nonsignatory.")[7] Moreover, a broad arbitration clause is given a "generous reading" (MCI Telecomms. Corp. v. Matrix Communications Corp, 135 F.3d 27, 32 (1st Cir. 1998)) and "should be construed as broadly as it was intended." Carter, Moore & Co. v. Donahue, 345 Mass. 672, 676, 189 N.E.2d 217 (Mass. 1963).

In construing a broad arbitration clause, such as the one contained in Kristian's and Masterman's Subscriber Agreement, the United States Supreme Court has held that claims (including Sherman Act claims) that merely "touch[ed] matters" covered by such a clause were arbitrable. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n. 13 (1985). In Mitsubishi Motors, an automobile dealer asserted a counterclaim against an

---

[7]  The Fluchmann v. Associates Fin. Svcs. case is attached as Exhibit 3.

9

automobile manufacturer for violations of the Sherman Act and the district court compelled arbitration of most of the parties' claims pursuant to an arbitration clause contained in a distribution and sales agreement between them. Arbitration of the antitrust claims was appropriate because the arbitration clause at issue was broadly worded to encompass any claim with some connection to the substance of the contract:

> [The distributor] ignores the inclusion within those "certain matters" of "[a]ll disputes, controversies or differences which may <u>arise</u> between [the manufacturer] and [the distributor] <u>out of or in relation to</u> [the specified provisions] or for the breach thereof." . . . Thus, insofar as the allegations underlying the statutory claims <u>touch matters covered by the enumerated articles</u>, the Court of Appeals properly <u>resolved any doubts in favor of arbitrability</u>.

Mitsubishi Motors, 473 U.S. at 624 n. 13. (emphasis added) (holding antitrust claims were arbitrable under the FAA).

At the core of their antitrust claims in this action is the allegation that both Kristian and Masterman have had to pay higher prices for cable television services because of an anticompetitive market allegedly created by Comcast. Compl. ¶4 - ¶6. Plaintiffs' allegations plainly "relate to" – and "touch matters covered by" – the Subscriber Agreement.[8]

In other words, Kristian's and Masterman's claims necessarily depend on the provision of service, under their Subscriber Agreement, and their payment of what they consider higher prices for that service. In an antitrust case brought against a satellite television provider, a district court found that similar allegations of subscribers paying higher prices for services caused by alleged anticompetitive behavior fell within the scope of the provider's arbitration clause because the

---

[8] See also Acquaire v. Canada Dry Bottling, 906 F. Supp. 819, 836 (E.D.N.Y. 1995) (compelling arbitration of antitrust claims where allegations "touch[ed] matters" covered by a distributor's agreement); see also Automated Technology Machines, Inc. v. Diebold, Inc., No. Civ.A. 01-2777, 2002 WL 1009471, at *6 (E.D. La. May 15, 2002) (arbitration clause in a lease/purchase agreement covering "any matter arising out of this transaction" was broad enough to include antitrust claims). The Automated Technology Machines case is attached hereto as Exhibit 4.

allegations centered around the service provided: "Plaintiffs allege that they have paid higher prices for services and equipment than they would have but for DirecTV's alleged anti-competitive actions. [citation omitted] These allegations center around DirecTV's services, disputes which <u>clearly fall within the scope of the arbitration clause</u>." <u>Bischoff v. DirecTV, Inc.</u>, 180 F. Supp. 2d 1097, 1106 (C.D. Cal. 2002) (emphasis added).

Accordingly, as the scope of the arbitration provision in the Subscriber Agreement covers the allegations asserted in this action, the Court should compel Kristian and Masterman to arbitrate their claims.

### B. Courts Reviewing the Same Arbitration Provision as that Contained in the Subscriber Agreement Have Compelled Arbitration.

An Illinois court has already compelled a cable subscriber to arbitrate his claims arising under the same Subscriber Agreement at issue as in the instant case. <u>Cohen v. AT&T Broadband Management Corp.</u>, No. 01 CH 21535 (Circuit Court of Cook County, Illinois, County Dept., Chancery Div. Jan. 24, 2003). Avery Cohen was a subscriber to AT&T's high speed Internet service and cable television service in Cook County, Illinois. <u>Id</u>. at 2. Cohen became dissatisfied with changes made to this Internet service and in June 2002 filed a class action complaint. AT&T Broadband, now owned by Comcast, moved to compel arbitration on the basis that the arbitration clause – the same clause the Illinois Plaintiffs now seek to avoid – mandated arbitration. <u>Id</u>. The court agreed and stayed the action. The <u>Cohen</u> court held that notices similar to those mailed to the Illinois Plaintiffs in this action were valid, enforceable contracts. <u>Id</u>. at 2-5. As here, the subscriber had been given an opportunity to cancel the service when the arbitration provision was added, but the subscriber continued to receive service and therefore, was bound to arbitrate his claims:

> Cohen was given a reasonable period to stop using the services, which would thus notify AT&T that he did not accept the contract

11

> terms of either the Video Notice or the Subscriber Agreement.
> Yet, he continued to use both his cable television and Internet
> service. . . . Thus, Cohen's silence and continued use of the
> service after receiving the Legal Notice, email, and letter binds him
> to the terms of the Video Notice and Subscriber Agreement.

Cohen Decision at 7. A copy of the Decision in the Cohen case is attached as Exhibit 2.

Kristian and Masterman are no different than the subscriber in the Cohen case. Like the subscriber in Cohen, each received the Subscriber Agreement by mail, but neither had their service disconnected. Devine Aff. ¶6 and ¶7. Instead, each of them, like the subscriber in Cohen, continued their service. Devine Aff. ¶6 and ¶7. Accordingly, they, like the subscriber in Cohen are bound to the arbitration provision in their Subscriber Agreement and should be compelled to arbitrate their claims. See also Boomer v. AT&T Corp., 309 F.3d 404, 415-17 (7th Cir. 2002) (enforcing a similar arbitration clause in a consumer class action under the Communications Act concerning overcharges for telephone service where each subscriber was afforded a reasonable opportunity to reject the clause by discontinuing the service before becoming bound to arbitrate).

The holdings in Boomer and Cohen are consistent with the holdings of Massachusetts courts that have considered the enforceability of subsequently-added arbitration clauses to agreements between parties. In DeLuca v. Bear Stearns & Co., Inc., 175 F. Supp. 2d 102 (D. Mass. 2001), for example, a stockbroker brought a Title VII employment discrimination action against her employer which moved to compel arbitration of the stockbroker's claims. The employer added an arbitration clause to its employee handbook twelve years after the stockbroker was hired. Id. at 105. Although the employee acknowledged receipt of the new employee handbook, she made a notation on the agreement stating, "I do not completely understand this statement but I signed it so that I wouldn't lose my job." Id. The DeLuca court

compelled arbitration of the stockbroker's discrimination claims holding that continued employment was the consideration for the added term to the conditions of her employment. Id. at 108.

Like the stockbroker in DeLuca and the cable subscriber in Cohen, Kristian and Masterman became bound to arbitrate their claims because both Plaintiffs continued their relationships with their cable provider after receiving the Subscriber Agreement. Accordingly, they are bound to the arbitration provision in their Subscriber Agreement and should be compelled to arbitrate their claims.

## IV. THE COURT SHOULD ENFORCE THE BAR AGAINST CLASSWIDE ARBITRATION.

Finally, the Court should enforce all provisions of the arbitration clause contained in the Subscriber Agreement – including the provision that bars arbitration on a classwide basis, as well as the provision requiring that claims be arbitrated within one year of the date of their occurrence. Policies & Practices ¶13. Pursuant to Section 4 of the FAA, the Court should "make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof." 9 U.S.C. § 4 (emphasis added).

Massachusetts courts have enforced arbitration agreements containing a class action bar. See, e.g., Fluehmann, 2002 WL 500564, at *3 (compelling arbitration of borrower's Truth in Lending Act claims brought in a putative class action where arbitration provision in loan documents provided that "there shall be no class action arbitration pursuant to this agreement"). Moreover, "the unavailability in arbitration of procedural devices such as class action suits does not relieve a party of an obligation to arbitrate under a valid arbitration agreement." Mattox v. Decision One Mortgage Co., LLC, No. 01-10657-GAO, 2002 WL 31121087, at *2 (D. Mass.

13

Sept. 26, 2002) (compelling arbitration of claims for violation of the Real Estate Settlement Procedures Act brought in a putative class action).[9]

All provisions contained in Plaintiffs' Subscriber Agreement should be similarly enforced, and accordingly, the Court should enforce the class arbitration bar.

## CONCLUSION

For the foregoing reasons, pursuant to 9 U.S.C. §§ 2 - 4 and the Plaintiffs' Subscriber Agreements, Defendants respectfully request that the Court order Plaintiffs to submit their claims to binding arbitration in accordance with the terms of the Subscriber Agreement, and stay this action pending arbitration.

DATED this 12th day of March, 2004.

Respectfully submitted,

_____
Mark A. Berthiaume (B.B.O. # 041715)
Christopher Robertson (B.B.O. # 642094)
Seyfarth Shaw LLP
World Trade Center East, Suite 300
Two Seaport Lane
Boston, MA  02210-2028
Telephone:  (617) 946-4800
Facsimile: (617) 946-4801

Christopher M. Curran
Jaime A. Bianchi
George L. Paul
White & Case LLP
601 Thirteenth Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Attorneys for Defendants*

---

[9] The Mattox v. Decision One Mortgage Co. case is attached hereto as Exhibit 5.

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he has caused to be served a copy of **Defendants' Memorandum of Law in Support of Motion to Compel Arbitration** upon the parties listed on the attached Service List via U.S. Mail on the 12th day of March, 2004.

_____
Mark A. Berthiaume

15

BO1 15631908.1