IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(BOSTON)

Martha Kristian, *et al.*,

    Plaintiffs,

v.

Comcast Corporation, *et al.*,

    Defendants.

No. 03CV12466 EFH
The Honorable Edward F. Harrington

# CLASS PLAINTIFFS' OPPOSITION TO DEFENDANTS' AMENDED MOTION TO COMPEL ARBITRATION

47383

# **TABLE OF CONTENTS**

INTRODUCTION .......................................................................................................................1

STATEMENT OF THE CASE ....................................................................................................1

FACTS..........................................................................................................................................2

ARGUMENT................................................................................................................................3

    I.    ENFORCING THE PURPORTED ARBITRATION CLAUSES WOULD PREVENT CLASS PLAINTIFFS FROM EFFECTIVELY VINDICATING THEIR CAUSES OF ACTION UNDER THE SHERMAN ACT .............................3

        A.    Prosecution of This Major Antitrust Case Will Cost Millions of Dollars............4

        B.    Defendants' Arbitration Clauses Preclude Effective Vindication of Class Plaintiffs' Statutory Causes of Action ........................................................5

            1.    Class action prohibition ................................................................................5

            2.    No recovery of treble damages, attorneys' fees or other costs ....................8

            3.    One-year limitations period .........................................................................9

            4.    Limitations on Discovery ..........................................................................10

    II.    THE ARBITRATION PROVISIONS ARE UNCONSCIONABLE.........................11

    III.    THE UNENFORCEABLE PROVISIONS ARE NOT SEVERABLE ......................13

    IV.    COMCAST HAS NOT SHOWN AN AGREEMENT TO ARBITRATE.................14

    V.    THE ARBITRATION PROVISIONS DO NOT GOVERN CLAIMS THAT AROSE BEFORE THEY ALLEGEDLY TOOK EFFECT ........................19

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1171 (N.D. Cal. 2002) ...................................... 7
*Alexander v. Anthony Int'l*, 341 F.3d 256, 265 (3d Cir. 2003) .................................................. 9, 10, 12
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, (1997) .......................................................... 6
*Ariba, Inc. v. Faulks*, No. Civ.A. 3:03-CV-0093, 2003 WL 21414769, at * 3 (N.D. Tex. June 13, 2003) .............................................................................................................................. 20
*Armendariz v. Fund Health Psychcare Serv., Inc.*, 6 P.3d 669 (Cal. 2000) ................................. 9
*AT&T Techs, Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986) ............................... 14
*Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273 (Ct. App. 1998) ................................................... 15, 16
*Blue Cross and Blue Shield of Alabama v. Woodruff*, 803 So.2d 519, 528 (Ala. 2001) ......... 16, 17
*Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002) ............................................................... 17
*Carll v. Terminex Int'l Co., LP*, 793 A.2d 921 (Pa. Super. 2002) ........................................ 9, 13, 14
*Choice Sec. Sys., Inc. v. AT&T Corp.*, 141 F.2d 1149 (1st Cir. 1998) ...................................... 19
*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002) ................................... 9, 10
*DeLuca v. Bear Stearns & Co., Inc.*, 175 F. Supp. 2d 102 (D. Mass. 2001) ............................. 20
*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39, 100 S. Ct. 1166 (1980) .................. 6
*Discover Bank v. Shea*, 877 A.2d 358 (N.J. Super. 2001) ..................................................... 7, 16
*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ............................................. 11
*Fehribach v. Ernst and Young, LLP*, NO., 1:02-CV-01270, 2003 WL 1906136, at *4 (S.D. Ind. Jan. 6, 2003) ..................................................................................................................... 20
*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ....................................... 14
*Fluehmann v. Associates Fin. Svcs.*, 2002 WL 500564 (D. Mass. 2002) ................................. 7
*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) ........................................... 3
*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) ........................................... 3, 7
*Hurlbut v. Gantshar*, 674 F. Supp. 385 (D. Mass. 1987) ........................................................ 16
*In re Universal Service Fund Telephone Billing Practices Litigation*, 300 F. Supp. 2d 1107 (D. Kan. 2003) ......................................................................................................................... 20
*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) ................................. 9, 10
*Integren v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003) ........................................................... 14
*Lamb v. Emhart Corp.*, 47 F.3d 551 (2d Cir. 1995) .............................................................. 15
*LeLouis v. W. Directory Co.*, 230 F.Supp.2d 1214, 1221 (D.Or.2001) ................................... 10
*Long v. Fidelity Water Systems, Inc.*, No. C-97-20118, 2000 WL 989914 (N.D. Cal. 2000) ........ 16, 20
*Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1105 (W.D. Mich. 2000) .......... 7
*Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1178-1179 (W.D. Wash. 2002) ........ 7
*Lytle v. CitiFinancial Services, Inc.*, 810 A.2d 643, 666-68 (Pa. Super. 2002) ....................... 7
*Mandel v. Household Bank (Nev.) N.A.*, 129 Cal. Rptr. 2d 380 (Ct. App. 2003) ....................... 8
*Mattingly v. Hughes Electronics Corp.*, 810 A.2d 498 (Md. Ct. Spec. App. 2002) ................. 16
*Mattox v. Decision One Mortgage Co., LLC*, No. CIV.A. 01-10657-GAO, 2002 WL 31121087, at *2 (D. Mass. Sept. 26, 2002) ................................................................................................. 3, 7, 11
*McCaskill v. SCI Mgmt. Corp.*, 285 F.3d 623, 626 (7th Cir. 2002) ........................................... 9
*McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1273 ................................................................. 7, 12
*Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671, 678 (Cal. Ct. App. 2002) .......................... 7
*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 670 (6th Cir. 2003) (en banc) .................. 9
*Morvai v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 780 N.E.2d 489 (Mass. App. Ct. 2002) ....... 15
*Myers v. MBNA Am.*, 2001 WL 965063 (D. Mont. Mar. 20, 2001) ....................................... 16

*Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061-62 (11th Cir. 1998) ......... 9
*Parilla v. IAP,* 368 F.3d 269, 278 (3d Cir. 2004) ......... 10
*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) ......... 14, 15, 18
*Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1286 (11th Cir. 2001) ......... 9
*Plaskett v. Bechtel Int'l, Inc.*, 243 F.Supp.2d 334, 341-42 (D.Vi.2003) ......... 10
*Powertel, Inc. v. Bexley*, 743 So.2d 570, 576 (Fla. Dist. Ct. App. 1999) ......... 7
*Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 41 (1st Cir. 2003) ......... 6
*Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 216 (3d Cir. 2003) ......... 9
*Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr.2d 138, 152 (Cal. App. 4th 1997) ......... 10
*Ting v. AT&T*, 182 F. Supp. 2d 902, 931 (N.D. Cal. 2002) ......... 6
*Ting v. AT&T*, 319 F.3d 1126 (9th Cir.), cert. denied, 124 S. Ct. 53 (Oct. 6, 2003) ......... 6
*Weld v. Glaxo Wellcome, Inc., 434 Mass.* 81, 93, 746 N.E.2d 522, 532 (2001) ......... 6

## Rules

15 U.S.C. § 15 ......... 8
15 U.S.C. §15b ......... 10
9 U.S.C. § 2 ......... 11

NAF's Code of Procedure Rule 29 ......... 11

47 C.F.R. § 76.1602 ......... 18, 21

47 C.F.R. § 76.1603 ......... 18

## INTRODUCTION

Class Plaintiffs file this Opposition to Defendants' Motion to Compel Arbitration. Defendants' motion should be denied for the following reasons: (1) defendants' purported arbitration clauses, which, among other things, bar class actions and severely restrict rights otherwise provided by federal antitrust laws and court rules, are invalid because they preclude Class Plaintiffs from vindicating their statutory antitrust rights; (2) defendants' purported arbitration clauses are not enforceable because they are unconscionable; (3) defendants have failed to establish that Class Plaintiffs assented to being bound by the arbitration clauses; and (4) defendants' arbitration clauses do not apply retroactively.

## STATEMENT OF THE CASE

Class Plaintiffs filed this antitrust case on December 8, 2003. They allege, in their Amended Complaint, that defendants (collectively "Comcast"), imposed horizontal market restraints by dividing and allocating markets through agreements "swapping" cable customers in violation of Section 1 of the Sherman Act. Class Plaintiffs also allege that Comcast monopolized or attempted to monopolize the markets for provision of cable service to consumers in its Boston area cluster in violation of Section 2 of the Sherman Act.

The Amended Complaint seeks monetary damages (trebled under the Sherman Act) for each putative class member in the amount that his or her cable bill was inflated as a result of Comcast's unlawful antitrust activity. Although the precise amount of damages per subscriber is not yet known, the amount of trebled damages for each subscriber is estimated to range from hundreds of dollars to perhaps a few thousand dollars. Woodward Decl. ¶ 2.

In its Motion to Compel Arbitration, Comcast argues that 2002 and 2003 purported agreements governing Class Plaintiffs' subscription to video cable services ("New Subscription Agreements") allegedly changed the prior subscription agreements of Class Plaintiffs ("Pre-Existing Subscription

Agreements") and bound them to arbitrate all of the claims in the Amended Complaint. Class Plaintiffs submit this Opposition to Comcast's Motion.

## FACTS

Boston cluster Class Plaintiffs Masterman and Kristian became subscribers of Comcast cable service through predecessor companies of Comcast in 1987 and 1999, respectively. Class Plaintiffs' initial subscriber agreements did not require arbitration of disputes and therefore did not limit the subscribers' ability to enforce their rights in court. *See* Devine Depo. at 16:13-17:9 (Woodward Decl., Ex. 1).

Comcast claims that AT&T Broadband (a predecessor of Comcast) in November/December 2002 and Comcast in November/December 2003 mailed to their then existing Boston cluster subscribers "Policies and Practices," which included a provision that (section 10) purported to require arbitration of disputes.[1] AT&T Broadband's Policies and Practices were sent to subscribers in November and December 2002 along with a multi-page price change notification. Devine Depo. at 51:19-53:10. Comcast's Policies and Practices were sent to subscribers in November and December 2003 in their monthly billing statement as a bill stuffer. Devine Depo. at 23:21-24:16, 60:6-64:9.

The 2002 and 2003 Policies and Practices (Section 10) contain identical arbitration provisions that, among other things, (1) prohibit arbitration on a class action basis; (2) severely shorten the otherwise applicable at least four-year statute of limitations for Sherman Act claims by requiring the consumer to contact Comcast within one year of the date of the "occurrence" underlying the dispute or else the consumer "waives" the right to pursue his or her claim; (3) require the consumer to pay his or her own fees and expenses involving the arbitration, even though the Sherman Act allows recovery of costs, including attorneys' fees; and (4) states that "discovery may be limited," and indeed, discovery in

---

[1] Comcast states that an arbitration clause was also included in AT&T Broadband's 2001 Policies and Practices for the Boston area cluster. Devine Depo. at 14:9-17:15; however, is not attempting to enforce the terms of that arbitration clause..

2

arbitration is far more limited than that provided for in judicial rules. Servais Decl. ¶¶ 3-6. Section 8 of the Policies and Practices further prohibits "punitive" or "treble" damages even though the Sherman Act specifically allows recovery of treble damages.[2]

The November 2002 and 2003 mailings did not contain a cover letter or notice alerting subscribers to the inclusion of an arbitration clause, a discussion or explanation of the arbitration provision, or its Effective Date. Devine Depo. at 54:4-63:1, 22:1-23:5, 24:3-25:15. The billing statement did not reference the arbitration clause and the envelope for the mailing did not mention the arbitration provision. *Id.* at 83:3-90:17. Neither AT&T Broadband nor Comcast gave Class Plaintiffs any other notice drawing their attention to the arbitration provisions Comcast is seeking to enforce, their right to reject them, or the Effective Date of the arbitration provisions. The imposition of arbitration provisions would have materially altered the Boston cluster Class Plaintiffs' contracts with Comcast and operated as a surprise.

## ARGUMENT

### I. ENFORCING THE PURPORTED ARBITRATION CLAUSES WOULD PREVENT CLASS PLAINTIFFS FROM EFFECTIVELY VINDICATING THEIR CAUSES OF ACTION UNDER THE SHERMAN ACT

If a valid arbitration agreement exists, courts may compel arbitration only "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 (1985)); *see Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (noting that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum"); *see also Mattox v. Decision One Mortgage Co., LLC*, No. CIV.A. 01-10657-GAO, 2002 WL 31121087, at *4 (D. Mass. Sept. 26, 2002) (citing to *Green Tree* and acknowledging that arbitration could be "oppressive[ ] for some consumers in some cases ....")

---

[2] *See* 15 U.S.C. § 15.

3

Comcast's arbitration clauses would preclude effective vindication of cable subscribers' claims under the Sherman Act. Their enforcement would thus immunize Comcast from responsibility for its illegal antitrust conduct, including the monopolization of the Boston cluster and overcharging customers. They cannot be enforced.

### A.   Prosecution of This Major Antitrust Case Will Cost Millions of Dollars

Successful prosecution of the Sherman Act claims by Class Plaintiffs and their counsel will require enormous resources, consuming millions of dollars in lawyers' time and out of pocket expenses. Under section 2 of the Sherman Act, for example, Class Plaintiffs must establish that Comcast monopolized or attempted to monopolize its Boston cluster. Their efforts thus will involve analyzing economic characteristics of defendants' clusters; defining the relevant product and geographic markets; assessing defendants' market power; evaluating the effects of potential competition; determining barriers to entry into the markets; assessing defendants' anticompetitive conduct in the relevant markets; reviewing numerous mergers, purchases, "swaps," and other transactions that Comcast used to monopolize the cluster; tracking the steady increases in subscription rates; and calculating Comcast's monopoly overcharges in the cluster over time. Decl. of John C. Beyer, Ph.D. ¶¶ 6-7; Decl. of Howard Sedran ¶ 9; Decl. of J. Owen Todd ¶ 6.b.

Document and deposition discovery will be extensive. Class Plaintiffs' counsel will need to review potentially millions of pages of business records from defendants and other sources and take many depositions. Sedran Decl. ¶ 9. Pretrial deposition and discovery will require the expenditure of several million dollars of attorneys' time and hundreds of thousands of dollars in expenses, including expert witness fees. *Id.*; Beyer Decl. ¶ 8. Expert witnesses, of course, are essential to the prosecution and vindication of Class Plaintiffs' claims. As former Massachusetts Superior Court Justice J. Owen Todd notes, "the individual consumer/subscribers' case would be extremely compromised, and effectively precluded, without the testimony of expert witnesses." Todd Decl. ¶ 6.b. A hearing on the merits will

require dozens of witnesses and weeks of presenting evidence. Trying plaintiffs' antitrust claims would require an estimated twenty days of hearings. Todd Decl. ¶ 10.

Class Plaintiffs lack the financial wherewithal to fund such an undertaking. And, due to the terms of Comcast's arbitration clauses, they would not bring such a case to vindicate their statutory rights because the potential recovery for an individual subscriber is miniscule in comparison to the huge costs necessary to litigate the case. *See* Kristian Decl. ¶ 7, Masterman Decl. ¶ 13. Class counsel similarly cannot be expected to provide the necessary resources. An investment of millions of dollars in time and out of pocket expenses makes no sense if the potential recovery is a mere fraction of that amount. Todd Decl. ¶ 8; Sedran Decl. ¶¶ 10 -14.

### B. Defendants' Arbitration Clauses Preclude Effective Vindication of Class Plaintiffs' Statutory Causes of Action

The high cost of prosecuting Class Plaintiffs' Sherman Act claims makes vindication of their rights impossible under Comcast's arbitration provisions. Several terms of the arbitration clauses establish that Class Plaintiffs cannot vindicate their statutory rights.

#### 1. Class action prohibition

The section dealing with arbitration in the Boston area Policies and Practices bars class actions:

> THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON *A CLASS ACTION OR CONSOLIDATED BASIS* OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED UNLESS YOUR STATE'S LAWS PROVIDE OTHERWISE.

Policies and Procedures § 10 (emphasis added). The Todd and Sedran declarations establish that the class action ban would prevent any reasonable litigant and lawyer from pursuing a complex antitrust claim, like the ones involved in this case, if the matter could not be brought as a class action. In fact, vindication of the very type of claim at issue here is a primary purpose of class actions.

The Supreme Court has repeatedly underscored that the class action mechanism is essential to the pursuit of small claims by individuals. *See, e.g., Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39, 100 S. Ct. 1166 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, an aggrieved person may be without any effective redress unless they may employ the class-action device"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").[3]

Numerous cases have refused to enforce an arbitration clause where, as here, a class action ban in the arbitration provision effectively prevented the pursuit of a statutory claim. For example, in a landmark consumer protection case, *Ting v. AT&T*, 182 F. Supp. 2d 902, 931 (N.D. Cal. 2002), the district court invalidated multiple provisions of AT&T's long distance subscriber agreements, including a prohibition on class actions, recognizing that "the prohibition on class actions will prevent class members from effectively vindicating their rights in certain categories of claims, especially those involving practices applicable to all members of the class but as to which any consumer has so little at stake that she cannot be expected to pursue her claim." The Ninth Circuit upheld the district court's determination that the bar on class actions was unconscionable. *Ting v. AT&T*, 319 F.3d 1126 (9th Cir.), *cert. denied*, 124 S. Ct. 53 (Oct. 6, 2003). Other courts striking down arbitration clauses with class action bans have also done so

---

[3] *See also Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 41 (1st Cir. 2003) ("The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation.") (citations omitted); *Weld v. Glaxo Wellcome, Inc.*, 434 Mass. 81, 93, 746 N.E.2d 522, 532 (2001) (A "case presents a classic illustration of the policies of judicial efficiency and access to courts that underlie the consumer class action suit [when] it aggregates numerous small claims into one action, whose likely range of recovery would preclude any individual plaintiff from having his or her day in court.").

6

because the arbitration provision precluded consumers from vindicating their rights.[4]

The evidence demonstrates that Comcast's subscribers cannot vindicate their statutory rights under the Sherman Act except through a class action. In addition, the courts that have struck down arbitration clauses barring class actions on unconscionability grounds were simply acknowledging the fact that without the class action device people with small claims could not enforce their rights. That circumstance exists here in extreme form: because a major antitrust case like this one costs millions of dollars to discover, prepare, and try, limiting subscribers to individual arbitrations would have the effect of immunizing Comcast from answering for its antitrust violations and make the civil remedies under the Sherman Act a dead letter.[5]

---

[4] *See, e.g., Lytle v. CitiFinancial Services, Inc.*, 810 A.2d 643, 666-68 (Pa. Super. 2002) (acknowledging that an arbitration clause banning class actions was unconscionable if "the costs associated with the arbitration of [appellants'] single claim against CitiFinancial would operate to preclude them from pursuing a remedy for the wrongs allegedly perpetrated by CitiFinancial."); *McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1273 (Pa. Super. 2004) (finding arbitration provision barring class actions unconscionable because evidence showed "the costs associated with arbitration of a single claim would operate to preclude a claimant from pursuing a remedy...."); *Discover Bank v. Shea*, 877 A.2d 358, 366 (N.J. Super. 2001) (court invalidated arbitration provision banning class actions and stated, "[w]hile Discover can use the provision to preclude class actions and therefore, effectively immunize itself completely from small claims, individuals gain nothing, and in fact, are effectively deprived of their small individual claims"); *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1178-1179 (W.D. Wash. 2002) (class action bar substantively unconscionable because plaintiffs "effectively may be prevented from vindicating their rights"); *Powertel, Inc. v. Bexley*, 743 So.2d 570, 576 (Fla. Dist. Ct. App. 1999) (arbitration clause unenforceable, in part, because it barred class action litigation, "the most economically feasible remedy for the kind of claim that has been asserted" where "the potential claims are too small to litigate individually"); *ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1171 (N.D. Cal. 2002) (holding class action ban unconscionable); *Mandel v. Household Bank (Nev.) N.A.*, 129 Cal. Rptr. 2d 380 (Ct. App. 2003) (same); *Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671, 678 (Cal. Ct. App. 2002) (same); *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1105 (W.D. Mich. 2000) (same).

[5] Defendants' reliance on *Fluehmann v. Associates Fin. Svcs.*, 2002 WL 500564 (D. Mass. 2002) and *Mattox v. Decision One Mortgage Co., LLC*, 2002 WL 31121087 (D. Mass. 2002) is misplaced. Both courts recognized that arbitration cannot be used to preclude the pursuit of statutory rights. *Fluehmann* at ___ (quoting *Green Tree*); *Mattox* at 3, 4 (citing *Green Tree* principle that prohibitive costs may preclude a litigant from effective vindication of federal statutory rights and recognizing "the possibility that arbitration would be less desirable, and perhaps even oppressive, for some consumers in some cases ..." In both cases, however, the court determined that the plaintiff failed to show that prohibitive costs associated with the arbitration would would precludes the vindication of statutory rights. In this case, the evidence is clear that Comcast's arbitration clauses preclude Class Plaintiffs from purusing their rights under the Sherman Act.

7

### 2. No recovery of treble damages, attorneys' fees or other costs

Boston area subscribers may not recover from Comcast any sums in excess of their actual damages, including treble damages, attorneys' fees and other costs of litigation. The Policies and Practices state, in relevant part, that:

> IN NO EVENT SHALL WE . . . HAVE ANY LIABILITY FOR PUNITIVE, *TREBLE*, EXEMPLARY, SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OUR PROVISION OF . . . SERVICES TO YOU . . . .
>
> YOU ARE RESPONSIBLE FOR ALL COSTS THAT YOU INCUR IN THE ARBITRATION, INCLUDING, BUT NOT LIMITED TO, YOUR EXPERT WITNESSES OR ATTORNEYS.

Policies and Practices §§ 8 & 10 (emphasis added); Devine Aff. Exs. A-B.

These limitations on remedies are directly contrary to the Sherman Act and therefore preclude Plaintiffs from vindicating their statutory antitrust claims. The Sherman Act provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws ... shall recover threefold the damages by him sustained and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15.[6]

The above provisions preclude a subscriber from vindicating his or her rights under the Sherman Act for at least two reasons. First, they expressly deny the subscriber the full extent of his or her rights provided under law. Second, because recovery of monies otherwise available under federal law is prohibited, it is even less feasible for a subscriber to bring an action under the Sherman Act. As J. Owen Todd testifies in his expert Declaration:

> Due to the fact that these restrictions limit an individual consumer/subscriber's damages to his/her actual damage - which are likely to be only a percentage of his/her monthly cable bill - and prohibit the recovery of other damages, including treble damages and attorneys' fees otherwise available under the antitrust laws, it is simply not practical to expect an individual consumer/subscriber or an attorney to pursue arbitration when the costs and expenses to do so

---

[6] The Supreme Court has specifically recognized the important deterrent role of treble damages under the antitrust laws. *Mitsubishi Motors Corp.*, 473 U.S. at 635 ("The treble-damages provision wielded by the private litigant is a chief tool in the antitrust enforcement scheme, posing a crucial deterrent to potential violators.")

8

would be infinitely greater than any possible recovery.

Todd Decl. ¶ 8. This conclusion is consistent with numerous cases that invalidated contract terms limiting remedies, including damages and/or the recovery of attorney fees and other costs of litigation.[7]

Based on the foregoing, Comcast's purported limitations on otherwise available statutory remedies preclude the vindication of the subscribers' statutory rights.

### 3. One-year limitations period

Comcast's arbitration clauses purport to cut the statute of limitation for subscribers' claims (but not claims by Comcast) to one year:

> YOU MUST CONTACT US *WITHIN ONE (1) YEAR* OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE (EXCEPT FOR BILLING DISPUTES WHICH ARE SUBJECT TO PARAGRAPH 3, RATES AND CHARGES, ABOVE), OR *YOU WAIVE THE RIGHT TO PURSUE A CLAIM* BASED UPON SUCH EVENT, FACTS OR DISPUTE.

Policies and Practices § 10 (emphasis added); Devine Aff. Exs. A-B.

---

[7] *See, e.g., Alexander v. Anthony Int'l*, 341 F.3d 256, 268 (3d Cir. 2003) (finding arbitration provision prohibiting special damages unconscionable); *Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 216 (3d Cir. 2003) (affirming refusal to enforce, in case under Title VII and Age Discrimination in Employment Act, contractual requirement that each party "shall pay its own costs and attorney's fees, regardless of the outcome of the arbitration"); *Carll v. Terminex Int'l Co., LP*, 793 A.2d 921 (Pa. Super. 2002) (holding that an arbitration clause limiting damages was unconscionable and unenforceable as against public policy); *Armendariz v. Fund Health Psychcare Serv., Inc.*, 6 P.3d 669 (Cal. 2000) ("The principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorneys fees appears to be undisputed."); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 670 (6th Cir. 2003) (*en banc*) (holding that "the limitations that the Circuit City arbitration agreement places on the damages a claimant may recover from arbitration are unenforceable."); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002) (finding arbitration agreement unenforceable in part because it forced plaintiff "to arbitrate his statutory claims without affording him the benefit of the full range of statutory remedies.") (*cert. denied*, 535 U.S. 1112 (2002)); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) (invalidating arbitration clause "[b]ecause the remedies limitation improperly proscribes available statutory remedies"); *McCaskill v. SCI Mgmt. Corp.*, 285 F.3d 623, 626 (7th Cir. 2002) (arbitration agreement that did not provide for award of attorney fees to successful Title VII claimant was unenforceable because "[t]he right to attorney's fees . . . is central to the ability of persons to seek redress from violations of Title VII."); *Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1286 (11th Cir. 2001) ) ("federal statutory claims are arbitrable only when arbitration can serve the same remedial and deterrent functions as litigation, and an agreement that limits the remedies available cannot adequately serve those functions.") (citing *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061-62 (11th Cir. 1998)) (holding unenforceable an arbitration agreement that limited remedies otherwise available in

9

This provision has the effect of reducing the limitations period under the Sherman Act from at least four years, *see* 15 U.S.C. §15b, to one year. For this very reason, arbitration clauses restricting an otherwise available limitations period have been found to be unconscionable and therefore unenforceable.[8]

Comcast's arbitration clauses restrict a subscriber's right to pursue his or her Sherman Act claims by severely shortening the statutory period enacted by Congress. As a consequence, a subscriber cannot vindicate his or her full federal statutory rights.

### 4.     Limitations on Discovery

Class Plaintiffs would be further precluded from vindicating their statutory antitrust claims in arbitration due to the limited discovery available in arbitration proceedings. As expert J. Owen Todd states: "This complex antitrust litigation will require the full array of open and liberal discovery rights and methods provided for under the Rules of Civil Procedure. Plaintiffs could not effectively pursue their antitrust claims without access to such discovery." Todd Decl. ¶ 9.

The Boston area arbitration clauses provide for arbitration before the AAA, the Judicial Arbitration & Mediation Service ("JAMS") or the National Arbitration Forum ("NAF"). *See* Policies & Practices §10. AAA rules provide only limited discovery: "[T]here is no formal discovery in arbitration."

---

court).

[8] *See, e.g., Ingle v. Circuit City Stores*, 328 F.3d 1165, 1175 (9th Cir. 2003) (finding an arbitration clause containing a one-year "statute of limitations" unconscionable "because the benefit of this provision flows only to [defendant corporation]" and deprived plaintiffs of statutorily available continuing violation doctrine); *Circuit City Stores v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002)(arbitration agreement unconscionable where it imposed "strict one year statute of limitations" depriving plaintiff of the continuing violation provision available under statute); *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr.2d 138, 152 (Cal. App. 4th 1997) (finding that where plaintiffs agreed "to a one-year statute of limitation even as to claims to which a longer period would otherwise apply," the court had "little difficulty concluding that its terms are 'so extreme as to appear unconscionable'"); *LeLouis v. W. Directory Co.*, 230 F.Supp.2d 1214, 1221 (D.Or.2001) (denying motion to compel where arbitration agreement contained "a one year statute of limitations, not withstanding that the applicable state and federal laws provide a longer duration."). *Alexander*, 341 F.3d at 256 (finding unconscionable arbitration agreement's notice provision prevented plaintiff from invoking continuing violation and tolling doctrines otherwise available); *Parilla v. IAP*, 368 F.3d 269, 278 (3d Cir. 2004) (same); *Plaskett v. Bechtel Int'l, Inc.*, 243 F.Supp.2d 334, 341-42 (D.Vi.2003) (finding arbitration agreement's limitations provision unconscionable where it favored defendant with greater bargaining power and plaintiff would have had "considerably longer to bring his

Servais Decl. ¶ 3-4. While the Commercial Arbitration Rules permit some exchange of documents, the rules state that the AAA "does not contemplate full-blown, litigationlike [sic] discovery." *Id.* ¶ 3. Similarly, JAMS restricts depositions as a matter of right to only one deposition per party, with the "necessity of additional depositions" to be determined by the arbitrator." *Id.* ¶ 5. NAF's Code of Procedure Rule 29 also strictly limits discovery. *Id.* ¶ 6.

In contrast, court rules provide for the very discovery necessary to properly litigate claims of the kind involved in this case. Todd Decl. ¶ 9. The discovery provided for in arbitration simply does not allow a subscriber to vindicate his or her Sherman Act claims. *Id.*

For all the reasons stated above, Class Plaintiffs' inability to vindicate their statutory rights under Comcast's arbitration clauses requires denial of defendants' motion to compel arbitration.

## II. THE ARBITRATION PROVISIONS ARE UNCONSCIONABLE

The Federal Arbitration Act provides that arbitration clauses are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). State contract law governs whether or not an agreement to arbitrate is unconscionable. *See Doctors Associates v. Casarotto*, 517 U.S. 681, 686-87 (1996).

In Massachusetts, courts consider "*both* the inequality of bargaining power (and thus the absence of meaningful negotiation over terms) *and* the oppressive nature of the substance of the agreement" to determine whether or not a contract is unconscionable. *Mattox v. Decision One Mortgage*, No. CIV.A. 01-10657-GAO, 2002 WL 31121087, at *4 (D. Mass. Sept. 26, 2002) (citing *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 16-17 (1st Cir. 1999)). The evidence here establishes that

---

various claims" otherwise).

Comcast's arbitration provisions are unconscionable.

There is no question that Comcast, the nation's largest cable operator, possesses overwhelmingly superior bargaining power with respect to its cable customers. The arbitration clauses also provide no option to the cable customer other than cancellation of service and were imposed on its cable customers on a "take it or leave it" basis. Comcast's arbitration clauses are therefore paradigm examples of an adhesion contract whereby Comcast has immense and disproportionate bargaining power over subscribers. *See, e.g., Alexander v. Anthony Int'l*, 341 F.3d 256, 265 (3d Cir. 2003) (noting that requisite unequal bargaining power established when a contract of adhesion presented on a "take-it-or-leave-it basis"); *McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1273 and n.6 (Pa. Super. 2004)(same).

Comcast's arbitration clauses are also patently oppressive. For example, the prohibition against class actions in arbitration not only tips the scales entirely in favor of Comcast but, under the facts of this case, completely strips consumers of their ability to vindicate their statutory antitrust claims. *See supra* at ___. As discussed earlier, many court decisions have determined that arbitration clauses prohibiting class actions are unconscionable if they preclude such rights. *See supra* at _____.

The denial of recovery of attorney fees or other costs of litigation, including expert expenses, otherwise authorized by statute, are also oppressive. Numerous courts have struck down arbitration provisions limiting damages or other remedies such as recovery of attorney fees because they were unconscionable. *See supra* at _____.

The severely shortened limitation period in Comcast's arbitration clauses likewise are unenforceable. They too unreasonably favor Comcast and various cases have struck down reduced limitation periods as unconscionable . *See supra* at _____. Comcast's attempt to unilaterally truncate the limitations period is particularly oppressive in this case. As stated by expert J. Owen Todd:

> Massachusetts law provides that a statute of limitations begins to run on the date of *injury*, not the date of occurrence or the date when facts give rise to a dispute. The first date in the arbitration provisions ("the occurrence of the events") is *legally insignificant* because the occurrence of an event can obviously predate an

12

> injury and the second "time frame" ("the facts giving rise to the dispute") is so amorphous that it *would be virtually impossible to determine the extent of the limitations period*. Again, the benefit of the statute of limitations runs solely to Comcast, while the entirety of the detriment is absorbed by the consumer. In my opinion, this disparity further renders the arbitration clauses, including the statute of limitations restrictions, unenforceable.

Todd Decl. ¶ 10. (Citations omitted; emphasis added).

The unconscionability of Comcast's arbitration clauses is further supported by the unexpected and unfair manner in which Comcast imposed its terms of arbitration on subscribers in 2002 and 2003. The arbitration clauses were simply sent to subscribers with a multi-page price change notification or buried as a bill stuffer in a billing statement. Devine Depo. at 51:19-53:10, 60:6-64:9. No separate notice in the mailing or otherwise apprised consumers of these arbitration provisions, their meaning or significance. Devine Depo. at 54:4-63:1, 22:1-23:5, 24:3-25:15. No 30-day advance notice of the provision was given as required by Federal Communications Commission regulations or in accordance with Comcast's current Policies and Practices. *See infra* at ___.

Comcast's arbitration clauses are infected with multiple unconscionable provisions. These one-sided arbitration clauses, under the circumstances of this case, clearly are oppressive and cannot be allowed to stand.

### III. THE UNENFORCEABLE PROVISIONS ARE NOT SEVERABLE

Under basic principles of contract law, the essential terms of an unenforceable contract provision are not severable. *See* Restatement (Second) of Contracts § 184(1) (1981). *See also Carll v. Terminex Int'l Co., LP*, 793 A.2d 921 (Pa. Super. 2002) (refusing to sever unconscionable term in arbitration clause because it was part of, and therefore not independent from, the arbitration provision); *Alexander*, 341 F.3d at 271 (finding that unconscionable terms in arbitration clause were essential part of arbitration provision and therefore could not be severed).

13

In this case, Comcast has loaded the arbitration clauses with terms that make arbitration of Class Plaintiffs' antitrust claims a futile and empty promise. Virtually all of the provisions at issue in this case appear in the sections dealing with arbitration. These include the arbitration clause itself, the ban on class actions, prohibitions against recovery of attorneys' fees and costs, and the one-year limitations period. They are not independent of the arbitration provisions and instead are integral parts of them. Moreover, because the arbitration clauses are so permeated with illegality it would be unfair and unreasonable to merely sever the illegal provisions. The terms of the arbitration clauses must fall together. *See, e.g., Carll* and *Alexander, supra*.

## IV. COMCAST HAS NOT SHOWN AN AGREEMENT TO ARBITRATE

Arbitration cannot be compelled by a court if no agreement to arbitrate exits. *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986) (stating that "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit") (citation omitted); *Hulburt v. Gantshar*, 674 F. Supp. 385, 390 (D. Mass. 1987) ("In the absence of an actual agreement to arbitrate a particular dispute or class of disputes, the Court cannot compel arbitration."). The court, not the arbitrator, determines whether the parties formed an agreement to arbitrate, applying "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[9]

In moving the Court to compel arbitration, Comcast has assumed the burden of showing, as a matter of law, that Class Plaintiffs and Comcast entered into New Subscription Agreements containing arbitration provisions. *See, e.g., Intergen v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003) ("A party who

---

[9] "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate has been made between the parties, should give the opposing party the benefit of all reasonable doubts and inferences that may arise." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). If the evidence raises a genuine issue of material fact regarding formation of an agreement to arbitrate, "the matter, upon a proper and timely demand, should be submitted to a jury." *Id.* (citing to Federal Arbitration Act which provides for jury trial of dispute regarding existence of arbitration agreement).

14

attempts to compel arbitration must show that a valid agreement exists ...."). Comcast has failed to carry its burden because it has not shown the Class Plaintiffs assented to the New Subscription Agreements or the new provisions they contained. *E.g., Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273 (Cal. Ct. App. 1998) (holding that restrictions on changes to parties' original agreement prevented amendment to include arbitration clause without proof of unequivocal assent).

Class Plaintiffs deny that they assented - by word, deed, or any other method - to Comcast's unilateral inclusion of arbitration provisions in the New Subscription Agreements. They also deny that the New Subscription Agreements amended their Pre-Existing Subscription Agreements. Comcast has presented no controverting evidence. It has on the contrary not produced as part of its motion papers the Pre-Existing Subscription Agreements Class Plaintiffs entered into when Comcast began providing cable service to them and any revised agreements that existed immediately before Comcast started using the New Subscription Agreements. The gap in the record requires the inference that the Pre-Existing Subscription Agreements do not permit amendments or additions such as the new arbitration provisions. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) (admonishing that in deciding a motion to compel arbitration courts "should give the opposing party the benefit of all reasonable doubts and inferences that may arise").

A party to a contract may be able to change its terms as provided in the initial agreement and thereby establish the requisite knowing assent for the specified modification. As stated in *Lamb v. Emhart Corp.*, 47 F.3d 551 (2d Cir. 1995):

> [W]hen one party has the power to alter or amend the terms of the agreement, there must be an ascertainable standard for the promulgation of the new terms that is set forth in the *original agreement* and that can 'provide a substitute for a present knowledge of and assent to the subsequently adopted provisions.'

*Id.* at 559 (emphasis added; citation omitted). *See also Morvai v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 780 N.E.2d 489 (Mass. App. Ct. 2002) ("[T]here must be mutual assent, objectively evidencing an

15

intent to be bound to arbitrate"). This principle has been routinely applied by the courts in determining whether a party has the authority to impose an arbitration agreement on a consumer after the initial contract was entered into by the parties.

For example, in *Blue Cross and Blue Shield of Alabama v. Woodruff*, 803 So.2d 519, 528 (Ala. 2001), the court determined that an arbitration clause imposed by Blue Cross on a consumer after the initial agreement was executed was unenforceable because Blue Cross had not shown that the arbitration provision was adopted in accordance with the terms of the initial agreement. Similarly, in *Mattingly v. Hughes Electronics Corp.*, 810 A.2d 498 (Md. Ct. Spec. App. 2002), the court denied DIRECTV's motion to compel arbitration against a consumer because it had not provided the requisite notice of the subsequently added arbitration clause as required by the initial agreement. Courts in other cases, such as *Badie v. Bank of America*, 79 Cal. Rptr. 2d 273 (Cal. Ct. App. 1998), *Myers v. MBNA Am.*, 2001 WL 965063 (D. Mont. Mar. 20, 2001), *Discover Bank v. Shea*, 877 A.2d 358 (N.J. Super. 2001), and *Long v. Fidelity Water Systems, Inc.*, No. C-97-20118, 2000 WL 989914 (N.D. Cal. 2000), have likewise found that an arbitration clause unilaterally imposed on consumers after the initial consumer agreement was executed was unenforceable because the terms of the initial agreement did not permit the addition of an arbitration clause.

Comcast has simply failed to show that its effort to impose arbitration provisions on Class Plaintiffs was authorized by the Pre-Existing Subscription Agreements, and, if so, that the addition was effected in accordance with the original contract. Since Comcast has not included the Pre-Existing Subscriber Agreements as part of its motion to compel arbitration, Comcast has not shown that the contract modification containing the arbitration clause was valid under the initial agreement. Accordingly, Comcast has failed to satisfy its burden of proof.[10]

---

[10] Defendants cite *Cohen v. AT&T Broadband Mgmt. Corp.*, No. 01 CH 21535 (Cir. Ct. of Cook County,