**Federal Communications Commission**                    **FCC 02-70**

## IV.    ORDERING CLAUSES

19.    Accordingly, **IT IS ORDERED,** pursuant to Sections 1, 4(i), 5(c), 405, and 623(l)(1)(D) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, 154(i), 155(c), 405, 543(l)(1)(D), and Section 1.115 of the Commission's rules, 47 C.F.R. § 1.115, that the Application for Review filed by the City of Boston, Massachusetts, **IS DENIED.**

20.    **IT IS FURTHER ORDERED** that the stay filed by the City of Boston is **DISMISSED** as moot.

FEDERAL COMMUNICATIONS COMMISSION

William F. Caton
Acting Secretary

# EX. 10(D)

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| MediaOne of Massachusetts, Inc. | )    CSR-6021-E |
| | ) |
| Petition for Determination of Effective | ) |
| Competition in Dedham (MA0238) and Needham | ) |
| (MA0199), Massachusetts | ) |

### MEMORANDUM OPINION AND ORDER

**Adopted: January 3, 2003**                    **Released: January 9, 2003**

By the Deputy Chief, Media Bureau:

### I.    INTRODUCTION

1.    MediaOne of Massachusetts, Inc. ("MediaOne") (providing service as "AT&T Broadband") has filed with the Commission a petition (the "Petition") pursuant to Sections 76.7 and 76.907 of the Commission's rules seeking a finding of effective competition in Dedham and Needham, Massachusetts ("the Communities"). MediaOne alleges that its cable systems serving the Communities are subject to effective competition pursuant to Section 623(a)(2) of the Communications Act of 1934, as amended ("Communications Act"),[1] and the Commission's implementing rules,[2] and seeks revocation of the certification of the local franchising authorities in the Communities to regulate basic cable service rates. MediaOne claims the presence of effective competition in the Communities stems from the competing services provided by RCN-BecoCom, L.L.C. ("RCN"), a franchised cable operator that also provides local exchange carrier ("LEC") service in the Communities.[3] No opposition to the Petition was filed.

### II.    DISCUSSION

2.    In the absence of a demonstration to the contrary, cable systems are presumed not to be subject to effective competition,[4] as that term is defined by Section 76.905 of the Commission's rules.[5] The cable operator bears the burden of rebutting the presumption that effective competition does not exist

---

[1] 47 U.S.C. § 543(a)(2).

[2] 47 C.F.R. § 76.905.

[3] 47 U.S.C. § 543(a); 47 C.F.R. § 76.905(b)(4).

[4] 47 C.F.R. § 76.906.

[5] 47 C.F.R. § 76.905.

relevant requirements, combined with RCN's existing service to nearly 2,100 subscribers in Dedham and 1,500 subscribers in Needham, evinces its offering of service in the Communities.[13]  We find that MediaOne has demonstrated that RCN's operations in the Communities substantially overlap those of MediaOne.

7.      RCN has widely distributed marketing materials throughout the greater Boston area, including the Communities, pointing out that residents need only call RCN for installation of its cable services.[14]  These marketing materials and RCN's website demonstrate that its cable service offers 80 channels of video programming that includes non-broadcast programming services such as ESPN, HBO, CNN, as well as a complement of local television broadcast stations, such as WHDH-TV (NBC), WCVB-TV (ABC), and WBZ-TV (CBS).[17]  Therefore, RCN provides comparable programming as required by the LEC effective competition test.

8.      MediaOne has demonstrated that RCN has commenced providing cable service within the Communities, has marketed its services in a manner that makes potential subscribers reasonably aware of its services, and otherwise satisfied the LEC effective competition test consistent with the evidentiary requirements set forth in the *Cable Reform Order*.[14]  Based on the foregoing, we conclude that MediaOne has submitted sufficient evidence demonstrating that its cable systems serving the Communities are subject to LEC effective competition.[19]

## III.    ORDERING CLAUSES

9.      Accordingly, **IT IS ORDERED** that the petition filed by MediaOne of Massachusetts, Inc. for a determination of effective competition in Dedham and Needham, Massachusetts **IS GRANTED.**

10.      **IT IS FURTHER ORDERED** that the certifications to regulate basic cable service rates of Dedham and Needham, Massachusetts **ARE REVOKED.**

11.      This action is taken pursuant to delegated authority pursuant to Section 0.283 of the Commission's rules.[20]

FEDERAL COMMUNICATIONS COMMISSION

William H. Johnson
Deputy Chief, Media Bureau

---

[13] *Id.* at 6 and 7.

[16] *Id.* at 7-8 and Exhibits E and J.

[17] *Id.* at 9-10 and Exhibit U.

[18] *See Cable Reform Order*, 14 FCC Rcd at 5305.

[19] MediaOne has argued that it is also subject to effective competition in the Communities pursuant to the Act's competing provider effective competition test because of the availability of DBS service in the Communities from DirecTV and Echostar.  We do not address that claim given our conclusion with regard to the LEC test.  In any instance, it appears that MediaOne has not submitted evidence demonstrating that households in the Communities are reasonably aware that DBS service is available.

[20] 47 C.F.R. § 0.283.

# EX. 10(E)

## Before the
## Federal Communications Commission
## Washington, D.C. 20554

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| AT&T CSC, Inc. | )     CSR-6015-E |
| | ) |
| Petition for Determination of Effective | ) |
| Competition   in   Lexington,   Massachusetts | ) |
| (MA0140) | ) |

### MEMORANDUM OPINION AND ORDER

**Adopted: December 4, 2002**                    **Released: December 9, 2002**

By the Deputy Chief, Media Bureau:

### I.    INTRODUCTION

1.    AT&T CSC, Inc. ("AT&T") has filed with the Commission a petition (the "Petition") pursuant to Sections 76.7 and 76.907 of the Commission's rules seeking a finding of effective competition in Lexington, Massachusetts ("Lexington").  AT&T alleges that its cable system serving Lexington is subject to effective competition pursuant to Section 623(a)(2) of the Communications Act of 1934, as amended ("Communications Act"),[1] and the Commission's implementing rules,[2] and seeks revocation of the certification of the local franchising authority in Lexington to regulate basic cable service rates. AT&T claims the presence of effective competition in Lexington stems from the competing services provided by RCN-BecoCom, L.L.C. ("RCN"), a franchised cable operator that also provides local exchange carrier ("LEC") service in Lexington.[3]  In the alternative, AT&T also claims that it is subject to effective competition in Lexington pursuant to the competing provider test.[4]  No opposition to the Petition was filed.

### II.    DISCUSSION

2.    In the absence of a demonstration to the contrary, cable systems are presumed not to be subject to effective competition,[5] as that term is defined by Section 76.905 of the Commission's rules.[6] The cable operator bears the burden of rebutting the presumption that effective competition does not exist

---

[1] 47 U.S.C. § 543(a)(2).

[2] 47 C.F.R. § 76.905.

[3] 47 U.S.C. § 543(a); 47 C.F.R. § 76.905(b)(4).

[4] 47 U.S.C. § 543(a); 47 C.F.R. § 76.905(b)(2).

[5] 47 C.F.R. § 76.906.

[6] 47 C.F.R. § 76.905.

While we have previously found that households in other communities are reasonably aware of the availability of DBS service, each such finding was predicated upon an evidentiary showing specific to those communities.[24] We find that AT&T has not met the first prong of the competing provider test. As such, it is unnecessary to evaluate its showing under the second prong.

## III.    ORDERING CLAUSES

11.     Accordingly, **IT IS ORDERED** that the petition filed by AT&T CSC, Inc. for a determination of effective competition in Lexington, Massachusetts **IS GRANTED.**

12.     **IT IS FURTHER ORDERED** that the certification to regulate basic cable service rates of Lexington, Massachusetts **IS REVOKED.**

13.     This action is taken pursuant to delegated authority pursuant to Section 0.283 of the Commission's rules.[25]

FEDERAL COMMUNICATIONS COMMISSION


William H. Johnson
Deputy Chief, Media Bureau

---

[24] *See, e.g., CC of Michigan L.L.C., Memorandum Opinion and Order,* DA 02-2323 at ¶ 4 (MB Sept. 20, 2002) ("Charter has provided evidence of the advertising of DBS service in news media serving the Communities.").

[25] 47 C.F.R. § 0.283.

# EX. 10(F)

## Before the
## Federal Communications Commission
## Washington, D.C. 20554

| | |
|---|---|
| In the Matter of: ) | CSR 5166-E |
| ) | |
| Time Warner Entertainment- ) | |
| Advance/Newhouse Partnership ) | |
| d/b/a Time Warner Cable ) | Somerville, MA |
| ) | CUID No. MA0057 |
| Petition for Determination of ) | |
| Effective Competition ) | |

### MEMORANDUM OPINION AND ORDER

**Adopted: February 3, 1999**               **Released: February 5, 1999**

By the Chief, Cable Services Bureau:

## I.    INTRODUCTION

1.    Time Warner Cable ("Time Warner") filed a petition asserting that it is subject to effective competition in the City of Somerville, Massachusetts ("Somerville" or the "City") from RCN-BecoCom, L.L.C. ("RCN"), an affiliate of a local exchange carrier ("LEC")[1] that is offering cable service in Somerville. In addition, Time Warner filed two supplements to its petition. No oppositions to Time Warner's submissions were filed.

2.    Section 623(a)(4) of the Communications Act of 1934, as amended ("Communications Act") allows franchising authorities to become certified to regulate basic cable service rates of cable operators which are not subject to effective competition.[2] For purposes of the initial request for certification, local franchising authorities may rely on a presumption that cable operators within their jurisdiction are not subject to effective competition unless they have actual knowledge to the contrary.[3] Certification becomes effective 30 days from the date of filing unless the Commission finds that the authority does not meet the statutory certification requirements.[4]  In *Implementation of Cable Act Reform*

---

[1]The Communications Act defines the term "local exchange carrier" as:

any person that is engaged in the provision of telephone exchange service or exchange access. Such term does not include a person insofar as such person is engaged in the provision of a commercial mobile service under Section 332(c), except to the extent that the Commission finds that such service should be included in the definition of such term.

Communications Act § 3(26), 47 U.S.C. § 153(26).

[2]Communications Act § 623(a)(4), 47 U.S.C. § 543(a)(4).

[3]47 C.F.R. §§ 76.906, 76.910(b)(4).

[4]47 C.F.R. § 76.910(e); 47 C.F.R. § 76.910(b); *see also* Communications Act § 623(a)(4), 47 U.S.C. § 543(a)(4).

performance bond running to the City in the sum of $300,000[31] and a letter of credit for $60,000[32] to ensure that RCN performs its obligations under the Final License. Finally, the Provisional License contains a liquidated damages section providing for the assessment of financial penalties against RCN should it default in the performance of obligations imposed by the Final License.[33] We find that the City's grant to RCN of a Provisional License to provide cable service and the requirements and obligations contained therein are clear evidence of RCN's commitment to providing such service to Somerville residents.

10.    We note that RCN's extensive marketing efforts and the wide press coverage of RCN's construction activity in the local media ensure that potential subscribers are reasonably aware of the availability of RCN's service. Generally, subscribers in wired areas are able to receive RCN's cable service for only a minimal additional investment and without encountering regulatory or technical obstacles.

11.    We find that Time Warner has submitted sufficient evidence demonstrating that its cable system serving Somerville, Massachusetts is subject to LEC effective competition from RCN. Time Warner's petition is hereby granted and the certification of the City of Somerville is revoked.

## IV.    ORDERING CLAUSES

12.    Accordingly, **IT IS ORDERED** that the Petition for Determination of Effective Competition filed by Time Warner Cable challenging the certification of the City of Somerville, Massachusetts **IS GRANTED.**

13.    **IT IS FURTHER ORDERED** that the certification of the City of Somerville, Massachusetts to regulate the basic cable rates of Time Warner Cable in Somerville, Massachusetts **IS REVOKED.**

14.    This action is taken pursuant to the interim rules adopted in *Implementation of Cable Reform Provisions of the Telecommunications Act of 1996*, 11 FCC Rcd 5937 (1996), and is without prejudice to any further action taken by the Commission in adopting final rules pursuant to the Notice of Proposed Rulemaking contained therein.[34]

15.    This action is taken pursuant to delegated authority under Section 0.321 of the Commission's rules, as amended.[35]

FEDERAL COMMUNICATIONS COMMISSION

---

[31]*Id.* at Section 9.2

[32]*Id.* at Section 9.3.

[33]*Id.* at Section 11.2.

[34]*Cable Act Reform Order*, 11 FCC Rcd at 5938-5945, 5961-5964.

[35]47 C.F.R § 0.321.

# EX. 11(A)

# BEFORE THE
# FEDERAL COMMUNICATIONS COMMISSION
## WASHINGTON, D.C. 20554

| | | |
|---|---|---|
| In re Petition of | ) | FCC File No. CSR-6152-E |
| | ) | |
| **Comcast of California/Massachusetts/Michigan/** | ) | |
| **Utah, Inc.** | ) | |
| | ) | |
| | ) | Brookline, MA (MA0129) |
| For Determination of | ) | |
| Effective Competition | ) | |
| | ) | |
| | ) | |

**To:    Chief, Media Bureau**

## SUPPLEMENT TO PETITION FOR SPECIAL RELIEF

**Comcast of
California/Massachusetts/
Michigan/Utah, Inc.**

By its Attorneys

Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238

May 31, 2006

BEFORE THE

## FEDERAL COMMUNICATIONS COMMISSION

### WASHINGTON, D.C. 20554

| | | |
|---|---|---|
| In re Petition of | ) | FCC File No. CSR-6152-E |
| | ) | |
| **Comcast of California/Massachusetts/Michigan/** | ) | |
| **Utah, Inc.** | ) | |
| | ) | Brookline, MA (MA0129) |
| | ) | |
| For Determination of | ) | |
| Effective Competition | ) | |
| | ) | |
| | ) | |

**To:    Chief, Media Bureau**

### SUPPLEMENT TO PETITION FOR SPECIAL RELIEF

Pursuant to Sections 76.7 and 76.907 of the Commission's regulations, 47 C.F.R.

§§ 76.7, 76.907, Comcast of California/Massachusetts/Michigan/Utah, Inc. ("Comcast"), by its

attorneys, hereby submits supplemental evidence in support of its April 11, 2003 petition for a

determination that it is subject to effective competition from RCN-BecoCom, L.L.C. ("RCN")

and satellite providers in the Town of Brookline, Massachusetts (MA0129) ("Brookline").[1]

### I.    BACKGROUND

Comcast holds a cable franchise and provides cable service in Brookline. RCN, a local

exchange carrier ("LEC") in Massachusetts, obtained a cable franchise in Brookline on March

10, 1998,[2] constructed a cable system, and began offering cable service comparable to and in

---

[1]    *See In re Petition of Comcast of Massachusetts/New Hampshire/Ohio, Inc. for Determination of Effective Competition*, Petition for Special Relief, CSR-6152-E (filed Apr. 11, 2003) ("Petition"); FCC, *Public Notice*, Report No. 0073, at 2 (rel. Apr. 28, 2003).

[2]    Cable Television Final License Granted to RCN-BecoCom, L.L.C. by the Board of Selectmen, Town of Brookline, Mass. (Mar. 10, 1998) ("*RCN Brookline License*") (attached as Exhibit A to the Petition).

direct competition with Comcast's service throughout Brookline in May 2000.[3]  RCN's cable

service area "substantially overlaps" Comcast's service area, and Brookline residents seeking to

receive RCN's service do not encounter any regulatory, technical, or other impediments in

obtaining service.[4]

On April 11, 2003, Comcast filed a petition for a determination that it is subject to

effective competition in Brookline based on the fact that it faced competition under the LEC test

and the competing provider test.  No opposition to the petition was filed.  To date, the

Commission has not ruled on Comcast's unopposed Petition.

## II.    SUPPLEMENTAL EVIDENCE

In light of the time that has lapsed since Comcast filed its Petition, and in order to ensure

that the facts in its petition are not stale when the Commission reviews them, Comcast hereby

submits supplemental evidence that reflects updated subscriber numbers, attached as Exhibits 1A

and 1B, and information regarding RCN's emergence from bankruptcy and improved

competitive status in the marketplace, attached as Exhibit 2.

Exhibits 1A and 1B show that RCN today serves 4,977 customers in Brookline (or

approximately 18.84% of the 26,413 households in Brookline), while satellite providers serve

---

[3]      *See* Town of Brookline, Minutes of CATV Monitoring Committee (May 15, 2000) (noting that service was
being offered in Brookline, all aerial construction had been completed, and underground construction was expected
to be completed by "mid-November 2000 at the latest"), *available at*
http://www.townofbrooklinemass.com/Broadband/MinutesArchive/05152000CATVMM.PDF; Town of Brookline,
Minutes of CATV Monitoring Committee (Nov. 26, 2001) (noting that RCN's network passed "95% of addresses in
the town"), *available at*
http://www.townofbrooklinemass.com/Broadband/Minutes/Archive/11262001CATVMM.PDF.

[4]      *See* Petition at 6; RCN *Brookline License* § 3.1(a) (requiring RCN, within twenty-four months of execution
of the License on March 10, 1998, to construct, install, and operate a 750 MHz subscriber network capable of
delivering 110 downstream video channels, with "*availab[ility] to all residents of the Town [of Brookline]*")
(emphasis added); see also RCN *Brookline License* § 3.1(b), (c).

3

956 subscribers (or approximately 3.62% of the 26,413 households in Brookline).[5]  Hence, competing providers collectively serve 5,933 subscribers or 22.46% of all households in Brookline and, therefore, Comcast remains subject to effective and vigorous competition from RCN and satellite providers.

Exhibit 2 shows that, since the Petition was filed, RCN entered *and exited* the Chapter 11 bankruptcy process. While in Chapter 11, RCN successfully "converted approximately $1.2 billion in unsecured obligations into . . . new equity, and eliminated approximately $1.8 billion in preferred share obligations."[6]  Company executives have asserted that RCN is strong enough "to take on every competitor it comes across."[7]  In April 2005, Bobbie Herbs, RCN's Senior Vice President of marketing, explained that RCN "did a 360-degree overview of the company and its image. We found that our customers love our three-product bundle, and they like our customer service. They also believe we're innovators with all our new service offerings."[8]  As of March 31, 2006, RCN reported 416,000 customers, revenue of $144 million, and positive EBITDA of

---

[5]    *See* Commonwealth of Mass., Dep't of Telecomm. & Energy, Cable Div., *System List 11* (Mar. 28, 2006) ("*2005 Operator System List*") (enclosed as Exhibit 1A); Media Business Corp., *ECTR - Effective Competition Tracking Report* (2006) (enclosed as Exhibit 1B) (reporting satellite penetration rates and allocating relevant subscribers in zip codes to respective franchise areas); U.S. Census Bureau, *American FactFinder, Population, Housing Units, Area, and Density: 2000; Massachusetts -- Place and County Subdivision* (stating that there are 26,413 households in Brookline), *at* http://factfinder.census.gov.  Exhibit 1B compiles the RCN subscriber numbers published by the Massachusetts DTE with the data provided by Media Business Corp. and, then, analyzes the combined data. *See* Exhibit 1B.

[6]    Press Release, RCN Corp., *RCN Corporation Announces Emergence from Bankruptcy* (Dec. 21, 2004) (enclosed in Exhibit 2), *available at* http://investor.rcn.com/ReleaseDetail.cfm?ReleaseID=160363.

[7]    K.C. Neel, *Fresh Start For RCN*, Multichannel News, Apr. 18, 2005, at 29 (enclosed in Exhibit 2) ("Wall Street also seems happy with RCN these days. Since the company came back to NASDAQ on March 21, the stock has stayed somewhat steady at around $20 a share. It's early in the game, but UBS Warburg LLC's top media analyst Aryeh Bourkoff believes RCN is well poised to do well in its markets going forward."), *available at* http://www.multichannel.com/article/CA525198.html.

[8]    K.C. Neel, *More Than Skin Deep, RCN's Rebranding Effort Involves a Big Focus on Customer Service*, Multichannel News, Apr. 18, 2005, at 31 (enclosed in Exhibit 2), *available at* http://www.multichannel.com/article/CA525205.html.

4

$27 million (an increase of nearly 24% from the $22 million reported in the fourth quarter of 2005).[9] In addition, RCN continues to extend its service area, expand the content it offers, test new services, and build its VOD library.[10] Therefore, as a result of RCN's emergence from the Chapter 11 process, Comcast now faces a stronger and even more effective competitor in Brookline.

## III.    ANALYSIS

### A.    Comcast Is Subject to Effective Competition from RCN Under the LEC Test.

In its Petition, Comcast demonstrated that its Brookline system is subject to effective competition from RCN pursuant to the LEC test found in Section 623($l$)(1)(D) of the Communications Act.[11] Specifically, Comcast showed that RCN met the criteria of the Commission's LEC test that: (1) a "LEC or LEC-affiliate" (2) "offers" video programming services (3) "comparable" to Comcast's service directly to subscribers in Brookline.[12] These circumstances have not changed, and the facts in this case are even more compelling today than they were when Comcast filed its Petition. RCN continues to be a LEC that offers video programming service comparable to Comcast's service directly to subscribers throughout the

---

[9]    *See* Press Release, RCN Corp., *RCN Reports First Quarter 2006 Results* (May 10, 2006) (quoting Peter D. Aquino, President and Chief Executive Officer of RCN, as saying that RCN is "off to a great start in 2006 . . . As we move forward in the year, we remain well positioned for continued growth in our core multi-play customers. Our new initiatives, including retooled, flexible service bundles, new digital vision video tier, faster broadband, and intelligently targeted marketing and promotions, put us on equal or better footing relative to our converging competitors in every market we serve . . . In all, we are on track to achieve our objectives for the year.") (enclosed in Exhibit 2), *available at* http://investor.rcn.com/ReleaseDetail.cfm?ReleaseID=195833.

[10]    *See id.; see generally* RCN Inc., *Press Releases, at* http://investor.rcn.com/releases_home.cfm (last visited Apr. 5, 2006) (examples enclosed in Exhibit 2).

[11]    Section 623($l$)(1)(D) provides that a cable operator is subject to effective competition where a LEC or its affiliate "offers video programming services directly to subscribers by any means (other than direct-to-home satellite services) in the franchise area of an unaffiliated cable operator which is providing cable service in that franchise area, but only if the video programming services so offered in that area are comparable to the video programming provided by the unaffiliated cable operator in that area." 47 U.S.C. § 543(l)(1)(D).

[12]    *See* Petition at 3-9.

5

Brookline franchise area.[13]  Accordingly, all of the criteria of the LEC test are satisfied, and

Comcast faces effective competition from RCN.

### B.    Comcast Also Remains Subject to Effective Competition Under the Competing Provider Test.

In addition to satisfying the LEC test, in its Petition, Comcast proved that its Brookline

system faces effective competition pursuant to the "competing provider test."[14]  Under that test, a

cable operator is subject to effective competition where:

> the franchise area is -- (i) served by at least two unaffiliated [MVPDs] each of which
> offers comparable video programming to at least 50 percent of the households in the
> franchise area; and (ii) the number of households subscribing to programming services
> offered by [MVPDs] other than the largest [MVPD] exceeds 15 percent of the households
> in the franchise area.[15]

As Comcast has shown previously, and the supplemental information included herein supports

further, this test is met in Brookline.

DBS and other satellite providers' services are "presumed to be technically available due

to [their] nationwide satellite footprint, and presumed to be actually available if households in a

franchise area are made reasonably aware that the service is available."[16]  Both DIRECTV and

EchoStar offer Brookline consumers not only their nationwide programming packages but also

the local broadcast channels.[17]  Therefore, at least two MVPDs unaffiliated with Comcast (in

---

[13]     *See generally id.*; Commonwealth of Mass., *Search Registered Service Providers* (listing RCN-BecoCom,
L.L.C. as a registered competitive local exchange carrier), *at* http://db.state.ma.us/dpu/qorders/frmTelecomList.asp
(last visited Apr. 5, 2006); *2006 Operator System List* at 11; RCN Corp., *Channel Lineups, at*
http://www.rcn.com/cabletv/lineupMain.php (last visited Apr. 5, 2006).

[14]     *See* Petition at 9-11.

[15]     47 U.S.C. § 543(*l*)(1)(B).

[16]     *In re Comcast of Dallas, L.P. Petition for Determination of Effective Competition in Dallas, Texas,*
Memorandum Opinion & Order, 20 FCC Rcd 17968, ¶ 3 (2005) (footnote omitted).

[17]     *See* DIRECTV, *Local Channels Availability* (based on the zip codes for Brookline, MA, 02445, 02446, and
02467), *at* http://www.directv.com/DTVAPP/see/LocalChannels.jsp?init=true (last visited Apr. 5, 2006); EchoStar
(footnote continued . . . )

6

addition to RCN) offer programming comparable to Comcast to at least 50% of the households in the Brookline franchise area.[18]

Although Comcast is the largest MVPD in Brookline,[19] its competitors serve well over 15% of the households in Brookline. As shown above and in the attached exhibits, competing MVPDs serve 22.46% of Brookline households.[20] Thus, it is clear that the 15% prong of the competing provider test is met and that Comcast continues to face effective competition in Brookline.

---

(footnote continued . . . )

Corp., *Local Channels* (based on address of 54 Harvard Street, Brookline, MA 01880), *at* https://customersupport.dishnetwork.com/customernetqual/prepAddress.do (last visited Apr. 5, 2006).

[18]     *See* Petition at 10-11.

[19]     *See 2006 Operator System List* at 5-10.

[20]     *See* Exhibits 1A-1B.

# EX. 11(B)

**BEFORE THE**

**FEDERAL COMMUNICATIONS COMMISSION**

**WASHINGTON, D.C. 20554**

| | | |
|---|---|---|
| In re Petition of | ) | FCC File No. CSR-6156-E |
| | ) | |
| **Comcast of Massachusetts I, Inc.** | ) | |
| | ) | |
| | ) | Burlington, MA (MA0080) |
| For Determination of | ) | Natick, MA (MA0141) |
| Effective Competition | ) | Waltham, MA (MA0261) |
| | ) | Watertown, MA (MA0130) |
| | ) | |

**To:    Chief, Media Bureau**

**SUPPLEMENT TO PETITION FOR SPECIAL RELIEF**

**Comcast of Massachusetts I, Inc.**

By its Attorneys

Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238

May 31, 2006

**BEFORE THE**

**FEDERAL COMMUNICATIONS COMMISSION**

**WASHINGTON, D.C. 20554**

| | | |
|---|---|---|
| In re Petition of | ) | FCC File No. CSR-6156-E |
| | ) | |
| **Comcast of Massachusetts I, Inc.** | ) | |
| | ) | Burlington, MA (MA0080) |
| | ) | Natick, MA (MA0141) |
| For Determination of | ) | Waltham, MA (MA0261) |
| Effective Competition | ) | Watertown, MA (MA0130) |
| | ) | |
| | ) | |

**To:    Chief, Media Bureau**

### SUPPLEMENT TO PETITION FOR SPECIAL RELIEF

Pursuant to Sections 76.7 and 76.907 of the Commission's regulations, 47 C.F.R.

§§ 76.7, 76.907, Comcast of Massachusetts I, Inc. ("Comcast"), by its attorneys, hereby submits

supplemental evidence in support of its April 11, 2003 petition for a determination that it is

subject to effective competition from RCN-BecoCom, L.L.C. ("RCN") and satellite providers in

the Towns of Burlington (MA0080), Natick (MA0141), and Waltham (MA0261), and the City of

Watertown, (MA0130), Massachusetts ("Burlington," "Natick," "Waltham," and "Watertown,"

respectively).[1]

### I.    BACKGROUND

Comcast holds cable franchises and provides cable service in Burlington, Natick,

Waltham, and Watertown.  RCN, a local exchange carrier ("LEC") in Massachusetts, obtained

---

[1]    *See In re Petition of Comcast of Massachusetts I, Inc. for Determination of Effective Competition*, Petition
for Special Relief, CSR-6156-E (filed Apr. 11, 2003) ("Petition"); FCC, *Public Notice*, Report No. 0073, at 2 (rel.
Apr. 28, 2003).

cable franchises in Burlington on April 26, 1999 and Natick on April 10, 2000,[2] and obtained

Open Video System ("OVS") agreements with Waltham on October 2, 1998 and Watertown on

January 7, 1999.[3] It has since constructed its network in these communities and has been

providing cable service comparable to and in direct competition with Comcast's service

throughout Burlington since June 6, 2000, Natick since July 16, 2001, and Waltham and

Watertown since November 1999.[4] RCN's cable service area "substantially overlaps" Comcast's

service area, and Burlington, Natick, Waltham, and Watertown residents seeking to receive

RCN's service do not encounter any regulatory, technical, or other impediments in obtaining

service.[5] In addition to competition from RCN, Comcast faces competition from satellite

---

[2]     Cable Television Final License Granted to RCN-BecoCom, L.L.C. by the Board of Selectmen, Town of Burlington, Mass. (Apr. 26, 1999) ("*RCN Burlington License*") (attached as Exhibit A to the Petition); Cable Television Final License Granted to RCN-BecoCom, L.L.C. by the Board of Selectmen, Town of Natick, Mass. (Apr. 10, 2000) ("*RCN Natick License*") (attached as Exhibit B to the Petition).

[3]     Interim Open Video Systems Agreement Between the City of Waltham and RCN-BecoCom, L.L.C. (Oct. 2, 1998) ("*RCN Waltham License*") (attached as Exhibit C to the Petition); Interim Open Video Systems Agreement Extension Between the City of Waltham and RCN-BecoCom, L.L.C. (Dec. 29, 2001) (also attached as Exhibit C to the Petition); Open Video Systems Agreement Between the City of Watertown and RCN-BecoCom, L.L.C. (Jan. 7, 1999) ("*RCN Watertown License*") (attached as Exhibit D to the Petition). The Commission has previously determined that OVS operators' provision of cable service provides effective competition to cable operators. *See In re MediaOne of Massachusetts; Petition for Determination of Effective Competition; Arlington, MA; Newton, MA*, 14 FCC Rcd. 13855, ¶¶ 4-13 (1999) (finding that MediaOne faced effective competition from RCN in Arlington and Newton where RCN had signed OVS agreements).

[4]     *See* RCN Corp., Press Release, *RCN Launches Its Bundled Telecommunications Services in Burlington, Massachusetts* (June 20, 2000), available at http://www.rcn.com/business/pr.php?id=40; RCN Corp., Press Release, *RCN Launches Service in Two New Markets for ResiLink, Its Unique Bundled Communications Product* (July 16, 2001) (stating that RCN is providing services to Natick, MA), *available at* http://www.rcn.com/business/pr.php?id=84; RCN Corp., Press Release, *Cablevision Withdraws Anti-Competitive Lawsuit Aimed at RCN's Boston Network Expansion* (Nov. 8, 1999) (stating that RCN was providing service to Waltham and Watertown in November 1999), *available at* http://www.rcn.com/business/pr.php?id=5.

[5]     *See* Petition at 6-7; RCN *Burlington License* § 3.1(a) and *RCN Natick License* § 3.1(a) (requiring RCN, within eighteen months of execution of the *RCN Burlington License* on April 26, 1999 and the *RCN Natick License* on April 10, 2000, to construct, install, operate, and "*make available to all residents*" and 860 MHZ network with 110 downstream and four upstream channels (emphasis added)). See also *Cable Granted an Extension*, The Boston Globe, Oct. 9, 2002 (noting that RCN received a one-year extension to complete construction of its underground network to the final 1600 households in Natick).

providers, including DIRECTV and EchoStar, throughout Burlington, Natick, Waltham, and Watertown.[6]

On April 11, 2003, Comcast filed a petition for a determination that it is subject to effective competition in Burlington, Natick, Waltham, and Watertown based on the fact that it faced competition under the LEC test and the competing provider test. No opposition to the petition was filed. To date, the Commission has not ruled on Comcast's unopposed Petition.

## II.    SUPPLEMENTAL EVIDENCE

In light of the time that has lapsed since Comcast filed its Petition, and in order to ensure that the facts in its petition are not stale when the Commission reviews them, Comcast hereby submits supplemental evidence that reflects updated subscriber numbers, attached as Exhibits 1A and 1B, and information regarding RCN's emergence from bankruptcy and improved competitive status in the marketplace, attached as Exhibit 2.

Exhibits 1A and 1B show that RCN today serves 2,404 customers in Burlington (or approximately 28.47% of the 8,445 households in Burlington), 2,435 customers in Natick (or approximately 18.22% of the 13,368 households in Natick), 4,734 customers in Waltham (or approximately 19.82 % of the 23,880 households in Waltham), and 2,817 customers in Watertown (or approximately 18.77% of the 15,008 households in Watertown). At the same time, satellite providers serve 479 subscribers in Burlington (or approximately 5.67% of the 8,445 households in Burlington), 759 subscribers in Natick (or approximately 5.68% of the 13,368 households in Natick), 1,373 subscribers in Waltham (or approximately 5.75% of the 23,880 households in Waltham), and 895 subscribers in Watertown (or approximately 5.96% of

---

6        Petition at 12-13.

4

the 15,008 households in Watertown).[7]  Hence, competing providers collectively serve 2,883

subscribers or 34.14% of all households in Burlington, 3,194 subscribers or 23.89% of all

households in Natick, 6,107 subscribers or 25.57% of all households in Waltham, and 3,712

subscribers or 24.73% percent of all households in Watertown.  Comcast, therefore, remains

subject to effective and vigorous competition from RCN and satellite providers.

Exhibit 2 shows that, since the Petition was filed, RCN entered *and exited* the Chapter 11

bankruptcy process.  While in Chapter 11, RCN successfully "converted approximately $1.2

billion in unsecured obligations into . . . new equity, and eliminated approximately $1.8 billion in

preferred share obligations."[8]  Company executives have asserted that RCN is strong enough "to

take on every competitor it comes across."[9]  In April 2005, Bobbie Herbs, RCN's Senior Vice

President of marketing, explained that RCN "did a 360-degree overview of the company and its

image.  We found that our customers love our three-product bundle, and they like our customer

service.  They also believe we're innovators with all our new service offerings."[10]  As of March

---

[7]      *See* Commonwealth of Mass., Dep't of Telecomm. & Energy, Cable Div., *System List 11* (Mar. 28, 2006)
("*2005 Operator System List*") (enclosed as Exhibit 1A); Media Bus. Corp., *ECTR - Effective Competition Tracking
Report* (Jan. 5, 2006) (reporting satellite penetration rates and allocating relevant subscribers in zip codes to
respective franchise areas) (enclosed as Exhibit 1B); U.S. Census Bureau, *American FactFinder, Population,
Housing Units, Are, and Density: 2000; Massachusetts -- Place and County Subdivision* (stating that there are 8,445
households in Burlington, 13,368 households in Natick, 23,880 households in Waltham, and 15,008 households in
Watertown), *at* http://factfinder.census.gov.  Exhibit 1B compiles the RCN subscriber numbers published by the
Massachusetts DTE with the data provided by Media Business Corp. and, then, analyzes the combined data. *See*
Exhibit 1B.

[8]      Press Release, RCN Corp., *RCN Corporation Announces Emergence from Bankruptcy* (Dec. 21, 2004)
(enclosed in Exhibit 2), *available at* http://investor.rcn.com/ReleaseDetail.cfm?ReleaseID=160363.

[9]      K.C. Neel, *Fresh Start For RCN*, Multichannel News, Apr. 18, 2005, at 29 (enclosed in Exhibit 2) ("Wall
Street also seems happy with RCN these days.  Since the company came back to NASDAQ on March 21, the stock
has stayed somewhat steady at around $20 a share.  It's early in the game, but UBS Warburg LLC's top media
analyst Aryeh Bourkoff believes RCN is well poised to do well in its markets going forward."), *available at*
http://www.multichannel.com/article/CA525198.html.

[10]     K.C. Neel, *More Than Skin Deep, RCN's Rebranding Effort Involves a Big Focus on Customer Service*,
Multichannel News, Apr. 18, 2005, at 31 (enclosed in Exhibit 2), *available at*
http://www.multichannel.com/article/CA525205.html.

31, 2006, RCN reported 416,000 customers, revenue of $144 million, and positive EBITDA of

$27 million (an increase of nearly 24% from the $22 million reported in the fourth quarter of

2005).[11] In addition, RCN continues to extend its service area, expand the content it offers, test

new services, and build its VOD library.[12] Therefore, as a result of RCN's emergence from the

Chapter 11 process, Comcast now faces a stronger and even more effective competitor in

Burlington, Natick, Waltham, and Watertown.

## III.    ANALYSIS

### A.    Comcast Is Subject to Effective Competition from RCN Under the LEC Test.

In its Petition, Comcast demonstrated that its cable systems in Burlington, Natick,

Waltham, and Watertown are subject to effective competition from RCN pursuant to the LEC

test found in Section 623($l$)(1)(D) of the Communications Act.[13] Specifically, Comcast showed

that RCN met the criteria of the Commission's LEC test that: (1) a "LEC or LEC-affiliate" (2)

"offers" video programming services (3) "comparable" to Comcast's service directly to

subscribers in Burlington, Natick, Waltham, and Watertown.[14] These circumstances have not

changed, and the facts in this case are even more compelling today than they were when

---

[11]    *See* Press Release, RCN Corp., *RCN Reports First Quarter 2006 Results* (May 10, 2006) (quoting Peter D.
Aquino, President and Chief Executive Officer of RCN, as saying that RCN is off to a great start in 2006 . . . As we
move forward in the year, we remain well positioned for continued growth in our core multi-play customers. Our
new initiatives, including retooled, flexible service bundles, new digital vision video tier, faster broadband, and
intelligently targeted marketing and promotions, put us on equal or better footing relative to our converging
competitors in every market we serve . . . In all, we are on track to achieve our objectives for the year.") (enclosed
in Exhibit 2), *available at* http://investor.rcn.com/ReleaseDetail.cfm?ReleaseID=195833.

[12]    *See id.; see generally* RCN Inc., *Press Releases* (examples enclosed in Exhibit 2), *at*
http://investor.rcn.com/releases_home.cfm (last visited Apr. 5, 2006).

[13]    Section 623($l$)(1)(D) provides that a cable operator is subject to effective competition where a LEC or its
affiliate "offers video programming services directly to subscribers by any means (other than direct-to-home satellite
services) in the franchise area of an unaffiliated cable operator which is providing cable service in that franchise
area, but only if the video programming services so offered in that area are comparable to the video programming
provided by the unaffiliated cable operator in that area." 47 U.S.C. § 543(l)(1)(D).

[14]    *See* Petition at 4-11.

Comcast filed its Petition. RCN continues to be a LEC that offers video programming service

comparable to Comcast's service directly to subscribers throughout the Burlington, Natick,

Waltham, and Watertown franchise areas.[15] Accordingly, all of the criteria of the LEC test are

satisfied, and Comcast faces effective competition from RCN.

## B.    Comcast Also Remains Subject to Effective Competition Under the Competing Provider Test.

In addition to satisfying the LEC test, in its Petition, Comcast proved that its cable

systems in Burlington, Natick, Waltham, and Watertown face effective competition pursuant to

the "competing provider test."[16] Under that test, a cable operator is subject to effective

competition where:

> the franchise area is -- (i) served by at least two unaffiliated [MVPDs] each of which
> offers comparable video programming to at least 50 percent of the households in the
> franchise area; and (ii) the number of households subscribing to programming services
> offered by [MVPDs] other than the largest [MVPD] exceeds 15 percent of the households
> in the franchise area.[17]

As Comcast has shown previously, and the supplemental information included herein supports

further, this test is met in Burlington, Natick, Waltham, and Watertown.

DBS and other satellite providers' services are "presumed to be technically available due

to [their] nationwide satellite footprint, and presumed to be actually available if households in a

franchise area are made reasonably aware that the service is available."[18] Both DIRECTV and

---

[15]    *See generally id.*; Commonwealth of Mass., *Search Registered Service Providers* (listing RCN-BecoCom, L.L.C. as a registered competitive local exchange carrier), *at* http://db.state.ma.us/dpu/qorders/frmTelecomList.asp (last visited Apr. 5, 2006); *2006 Operator System List* at 11; RCN Corp., *Channel Lineups, at* http://www.rcn.com/cabletv/lineupMain.php (last visited Apr. 5, 2006).

[16]    *See* Petition at 11-13.

[17]    47 U.S.C. § 543(*l*)(1)(B).

[18]    *In re Comcast of Dallas, L.P. Petition for Determination of Effective Competition in Dallas, Texas,* Memorandum Opinion & Order, 20 FCC Rcd. 17968, ¶ 3 (2005) (footnote omitted).

7